**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICA'S CHOICE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07CV00423 RWR** |
| | ) | |
| **CECIL HARRIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANT CECIL HARRIS' MOTION TO DISMISS,
OR ALTERNATIVELY, STAY**[1]</u>

COMES NOW Defendant Cecil Harris ("Mr. Harris") with his Motion to Dismiss, or alternatively, to Stay and in support thereof states as follows:

1.      Defendant Mr. Harris incorporates his Memorandum of Points and Authorities in Support of his Motion to Dismiss as though fully set forth herein.

WHEREFORE, for the reasons set forth herein, the Defendant, Cecil Harris, moves this Honorable Court for entry of an Order dismissing this case, awarding the Defendant his costs for having to defend this matter, and for such other further relief as the Court deems just and proper.

Respectfully submitted,

**WHITEFORD, TAYLOR & PRESTON, LLP**

<u>*//s// Andrew J. Terrell*</u>
Andrew J. Terrell (#431362)
Kevin A. Kernan (#457194)
1025 Connecticut Avenue, N.W., Suite 400
Washington, D.C.  20037
(202) 659-6800
(202) 331-0573 (facsimile)

---

[1] Movant has concurrently herewith filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2).  Movant files the instant motion subject thereto and without waiving his objection of lack of personal jurisdiction.

**OF COUNSEL:**
**RHORER LAW FIRM**

*//s// S. Bradley Rhorer, Esquire*
S. Bradley Rhorer, Esquire
10566 Airline Highway
Baton Rouge, Louisiana  70816
(225) 292-2767
(225) 292-2769 (facsimile)

**RICK STEINER FELL & BENOWITZ,**
**LLP**

*//s// Robert J. Benowitz, Esquire*
Robert J. Benowitz, Esquire
Three New York Place
New York, New York  10004
(212)422-0488
(212) 422-0158 (facsimile)

*Counsel for Defendant, Cecil Harris*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.4(d), service of the foregoing was made electronically through Court's CM/ECF system.

*//s// Andrew J. Terrell*
Andrew J. Terrell

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA'S CHOICE, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )  Case No. 1:07CV00423 RWR |
| | ) |
| CECIL HARRIS, | ) |
| | ) |
|     Defendant. | ) |

### DEFENDANT CECIL HARRIS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS, OR ALTERNATIVELY, STAY[2]

America's Choice, Inc. ("ACI") filed this declaratory judgment action – seeking only a declaration that it owed no monies under an employment contract with Cecil Harris – hours before Harris filed suit against ACI in Louisiana for breach of contract and violation of Louisiana's wage payment statute. This Court should refuse to countenance ACI's brazen forum shopping and, under the *Wilton* and *Brillhart* abstention doctrine, decline to entertain this anticipatory declaratory judgment suit. Harris moves the Court to dismiss, or alternatively stay, these proceedings, as follows:

### I. FACTS

Harris is a former employee of ACI. Affidavit of Cecil Harris, attached as Exhibit "A," at ¶9; ACI Complaint, attached as Exhibit "B," at ¶¶7-10. Harris is now and has always been a resident of Louisiana. Exhibit "A" at ¶2. ACI is apparently based in Washington, D.C., although it conducts business all over the country. Exhibit "B" at ¶1, 6.

---

2 Movant has concurrently herewith filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2). Movant files the instant motion subject thereto and without waiving his objection of lack of personal jurisdiction.

ACI hired Harris in August 2005 as a salesperson with a geographic territory consisting of Harris' home state of Louisiana and the neighboring state of Arkansas. Exhibit "A-1." ACI agreed to pay Harris a base salary together with a commission based on sales Harris generated in Louisiana and Arkansas. *Id*.

Harris maintains that he secured certain sales in Louisiana and Arkansas for which ACI refused to pay him the appropriate commission. Harris filed suit against ACI on February 27, 2007 in the United States District Court for the Southern District of New York. A copy of Harris's complaint in that case is attached as Exhibit "C."

The New York court, *sua sponte* and prior to any appearance by ACI, inquired whether the action should be transferred to another venue. A copy of the New York court's letter inquiry is attached as Exhibit "D." In response, Harris engaged Louisiana counsel to file suit against ACI in Louisiana. Harris filed (electronically) a notice of dismissal of the New York case on March 1, 2007 at approximately 6:30 p.m. A copy of the Notice of Dismissal is attached as Exhibit "E." Harris simultaneously faxed to ACI's counsel a courtesy copy of the notice of dismissal. A copy of Harris's transmittal to ACI's counsel is attached as Exhibit "F." The next day (March 2, 2007) at 3:26 p.m., Harris's Louisiana counsel filed suit against ACI, alleging breach of contract and violation of Louisiana's wage claim statute. A copy of the Louisiana state court lawsuit is attached as Exhibit "G."

Apparently, when ACI received the courtesy copy of the notice of dismissal of the New York suit, ACI perceived an opportunity to rush to the courthouse and deny Harris, the natural plaintiff, his choice of forum. Between the dismissal of the New York case on the evening of March 1, 2007 and the filing of the Louisiana suit less than 24 hours later, ACI filed the instant

2

action pursuant to 28 U.S.C. §2201 (the "Declaratory Judgment Act"). ACI seeks herein only a declaration that "it does not owe Harris any sums as commissions pursuant to or in connection with his former employment relationship with [ACI]." *See* Exhibit "B" at ¶17.

## II. <u>LAW</u>

ACI has brought this suit under the Declaratory Judgment Act. The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995) *citing Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). Specifically, the Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, ***may*** declare the rights and other legal relations of any interested party seeking such declaration . . ."

28 U.S.C. 2201(a)(***emphasis added***). Thus, the Declaratory Judgment Act confers on the courts a "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 115 S.Ct. at 2142. Nowhere is the exercise of a court's discretion to refuse to entertain a claim for declaratory relief more appropriate than where – as here – a parallel state court proceeding, not involving issues of federal law, will fully adjudicate the rights of the parties. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed 1620 (1942).

The Supreme Court addressed this issue decades ago in *Brillhart*, where an excess insurer had filed a declaratory judgment action seeking a declaration of its liability to a judgment creditor in a state court tort suit. After the excess insurer filed the declaratory judgment action, the judgment creditor joined the excess insurer in a state court garnishment proceeding to enforce

3

the judgment.   The district court dismissed the declaratory judgment suit, presumably in

deference to the garnishment proceeding, but the court of appeals reversed and remanded with

instructions to the district court to proceed on the merits.  *Brillhart*, 62 S.Ct. at 1174-75.

The Supreme Court reversed the decision of the court of appeals, noting that:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to
> proceed in a declaratory judgment suit where another suit is pending in a state
> court presenting the same issues, not governed by federal law, between the same
> parties. Gratuitous interference with the orderly and comprehensive disposition of
> a state court litigation should be avoided.

*Brillhart*, 62 S.Ct. at 1175-76.  The Court remanded the case to the district court simply for

consideration of whether the state court proceeding would satisfactorily adjudicate the rights of

the parties and to accordingly exercise its discretion in choosing whether to hear to declaratory

judgment case.  *Id*.

Subsequent to the *Brillhart* decision, a split developed in the circuit courts over (1)

whether the proper standard for declining to hear a suit under the Declaratory Judgment Act was

the *Brillhart* "discretionary standard" or the "exceptional circumstances" test later developed in

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47

L.Ed.2d 483 (1976) and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

103 S.Ct. 927, 74 L.Ed.2d 765 (1983); and (2) whether the applicable standard for appellate

review of a district court's decision not to entertain a declaratory judgment action was abuse of

discretion or *de novo*.  The Supreme Court resolved both issues in *Wilton v. Seven Falls Co.*, 515

U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

*Wilton* involved another insurer filing a declaratory judgment suit in anticipation of a

coercive suit.  When the insured later filed a state court suit, and on the insured's motion, the

district court stayed the declaratory judgment suit "to avoid piecemeal litigation and **to bar [the insurer]'s attempts at forum shopping**." *Wilton*, 115 S.Ct. at 2139 (**emphasis added**).  The court of appeals affirmed.  *Id.* at 2140.  The Supreme Court, noting the "unique breadth of [the district court's] discretion to decline to enter a declaratory judgment,"  affirmed the rulings of the courts below and announced that the *Brillhart* standard would control, and that the standard of review on appeal would be abuse of discretion.  *Id.* at 2143-44.

The Supreme Court has not given an exhaustive list of factors a district court should consider in the exercise of its discretion.  *See Brillhart*, 62 S.Ct. at 1176 ("We do not now attempt a comprehensive enumeration of what in other cases may be revealed as relevant factors governing the exercise of a district court's discretion.").   However, various circuits have developed consideration factors, common to each the discouragement of forum shopping.  For instance, the Ninth Circuit characterizes three factors as "touchstone factors:" that the district court should (1) avoid needless determination of state law issues; (2) **discourage litigants from filing declaratory actions as a means of forum shopping**; and (3) avoid duplicative litigation.  *See Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  The Fourth Circuit focuses on four factors: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether any overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts; and (4) **whether the federal action is "mere 'procedural fencing', in the sense that the action is merely the product of forum-shopping**."  *See United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493-94 (4th Cir. 1998), *quoting Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994) (**emphasis added**).

5

Whether mechanically applying specific factors or not, courts uniformly agree that a declaratory judgment suit brought solely in anticipation of a coercive suit is inappropriate. "The courts properly decline relief if the declaratory judgment procedure, and the federal forum, is being used for 'procedural fencing' or in a 'race for res judicata.'" 10A *Wright & Miller* §2759, at 651.

The District of Columbia Circuit has stated:

> The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of this traditional choice of forum and timing, and it provokes a disorderly race to the courthouse.

*Millard v. Hanes Corp.*, 531 F.2d 585, 591, 592-93 (D.C. Cir. 1976). This court has held similarly in *American Greiner Electronic, Inc. v. Establissements Henry-Le Paute, S.A.*, 174 F.Supp. 918 (D.C.D.C. 1959), where it dismissed a suit to declare a patent invalid filed days before a patent infringement suit was filed against the declaratory plaintiff. The *American Greiner* court stated:

> The philosophy on which the Declaratory Judgment Act is based and the very purpose of permitting suits to be brought for a declaratory judgment is to allow and provide a method for adjudicating the rights of parties prior to the time that they are in shape for adjudication by a suit for damages or for some other affirmative relief. There is no necessity for a declaratory judgment in the situation here presented because the same issues are involved in the action pending in the District of Connecticut. For that reason, in the exercise of discretion, the Court will decline to take jurisdiction of this action and will grant the motion to dismiss.

*Id.* See also, *Continental Cas. Co. v. Robsac Industries*, 947 F.2d 1367, 1372-73 (9th Cir. 1991)("Whether the federal declaratory judgment action regarding insurance coverage is filed first or second, it is reactive, and permitting it to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the *Brillhart* principle."); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2nd Cir. 1978)("As Mr.

6

Justice Brennan has observed, '[t]he federal declaratory judgment is not a prize to the winner of the race to the courthouses.'"); *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 431 (7th Cir. 1993)("a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way."), *citing Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987); *Eli's Chicago Finest, Inc. v. The Cheesecake Factory, Inc.*, 23 F.Supp2d 906, 909 (N.D.Ill. 1998(declining to exercise jurisdiction over declaratory judgment action when "this Court has determined that the action pending is a preemptive attempt by Plaintiff to secure venue in anticipation of litigation by the Defendant."); *Successories, Inc. v. Arnold Palmer Enterprises, Inc.*, 990 F.Supp. 1044 (N.D.Ill. 1998)(accord); *First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F.Supp. 2d 669, 673 (D.Md. 2002)("[Declaratory judgment] actions are disfavored, however, when they are filed in anticipation of another lawsuit, in order to obtain a more favorable forum or procedural posture."); *Hudson County News Co. v. Metro Associates, Inc.*, 141 F.R.D. 386, 392 (D.Mass. 1992)("Where a federal declaratory judgment action merely anticipates a parallel state action in order to resolve issues in the forum of the declaratory judgment plaintiff's choosing, courts should exercise their discretion to deny jurisdiction."); *Massachusetts Eye & Ear Infirmary v. Eugene B. Casey Foundation*, 417 F.Supp.2d 192, 198 (D.Mass. 2006)(accord); *State Farm and Casualty Co. v. Taylor*, 118 F.R.D. 426, 431 (M.D.N.C. 1988)("The declaratory remedy is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be the plaintiff if he can beat the other party to the courthouse.").

### III. <u>ANALYSIS</u>

There are no considerations weighing in favor of this Court maintaining jurisdiction in this case. There is a parallel Louisiana state court proceeding, involving the same parties and the same issues. *See ITT Industr., Inc. v. Pacific Employers Ins. Co.*, 427 F.Supp. 2d 552)(parallel proceeding is one with identity of parties, claims, and time.).

There are no issues of federal law presented, as the only claims at issue are a state (Louisiana) law breach of contract claim and a state (Louisiana) wage law claim. Maintaining jurisdiction in this case would require needless determination of those state law issues. *See Brillhart*, 62 S.Ct. at 1175-76; *Government Employees Ins. Co.* 133 F.3d at 1225 (district court should avoid needless determination of state law issues.).

This suit and the Louisiana suit have both just begun. Maintaining this suit would necessitate duplicative litigation. *See Massachusetts Eye & Ear Infirmary*, 417 F.Supp. 2d at 198 (court should consider whether entertaining claim for declaratory relief comports with practicality and wise judicial administration).

Most importantly, ACI has impermissibly used this declaratory judgment action as a tactical device. *See* cases cited *supra*. Harris is the "natural" plaintiff in this case. He suffered damages as a result of ACI's breach of contract – *i.e.*, failure to pay commission. As the natural plaintiff, Harris should be allowed to choose the forum in which to litigate his grievance. *See Massachusetts Eye & Ear Infirmary*, 417 F.Supp. 2d at 198 (court should "respect[] the right of the natural plaintiff to shape his or her own claims and not have them shaped by the opposing party.").

Harris originally chose New York.  When the New York court indicated that it might transfer venue, Harris chose Louisiana – Harris's home state and the state comprising half of his sales territory under his contract with ACI.  Harris's fatal mistake was sending ACI's counsel a courtesy copy of the notice of dismissal of the New York suit.  ACI immediately filed this declaratory judgment action, in what can only be characterized as a preemptive strike to secure what ACI apparently considers a more favorable forum.  The Declaratory Judgment Act is not designed to promote such "procedural fencing."  *See Millard v. Hanes Corp.*, 531 F.2d 585, 591, 592-93 (D.C. Cir. 1976); *American Greiner Electronic, Inc. v. Establissements Henry-Le Paute, S.A.*, 174 F.Supp. 918 (D.D.C. 1959); and other cases cited *supra.*

## IV.  CONCLUSION

This Court has the discretion to decline to exercise jurisdiction over this declaratory judgment case, in favor of a pending state court case.  This Court should exercise that discretion, particularly in light of the declaratory plaintiff's use of the declaratory judgment procedure as an attempt to gain a tactical advantage over the natural plaintiff.

WHEREFORE, for the reasons set forth herein, the Defendant, Cecil Harris, moves this Honorable Court for entry of an Order dismissing this case, awarding the Defendant his costs for having to defend this matter, and for such other further relief as the Court deems just and proper.

Respectfully submitted,

**WHITEFORD, TAYLOR & PRESTON, LLP**

*//s// Andrew J. Terrell*
Andrew J. Terrell (#431362)
Kevin A. Kernan (#457194)
1025 Connecticut Avenue, N.W., Suite 400
Washington, D.C.  20037
(202) 659-6800
(202) 331-0573 (facsimile)

**OF COUNSEL:**
**RHORER LAW FIRM**

*//s// S. Bradley Rhorer, Esquire*
S. Bradley Rhorer, Esquire
10566 Airline Highway
Baton Rouge, Louisiana  70816
(225) 292-2767
(225) 292-2769 (facsimile)

**RICK STEINER FELL & BENOWITZ, LLP**

*//s// Robert J. Benowitz, Esquire*
Robert J. Benowitz, Esquire
Three New York Place
New York, New York  10004
(212)422-0488
(212) 422-0158 (facsimile)

*Counsel for Defendant, Cecil Harris*

10

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICA'S CHOICE, INC., | ) | |
| 555 13th Street, N.W. | ) | |
| Washington, D.C. 20004, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | CASE NUMBER: |
| v. | ) | |
| | ) | 1:07CV00423 RWR |
| CECIL HARRIS, | ) | |
| 8326 Harris Road | ) | |
| Denham Springs, Louisiana 70726, | ) | |
| | ) | |
| DEFENDANT | ) | |

## AFFIDAVIT OF CECIL HARRIS

PARISH OF LIVINGSTON

STATE OF LOUISIANA

Before me, the undersigned notary, in and for the parish and state aforesaid, personally came and appeared Cecil Harris who upon his oath deposed and stated as follows:

1. My name is Cecil Harris. I have personal knowledge of the facts stated herein, and same are true and correct.

2. I live in Denham Springs, Louisiana. I was born in Louisiana, grew up in Louisiana, went to school in Louisiana, married in Louisiana, and raised my family in Louisiana. I have never lived anywhere other than Louisiana.

3. I have never been a resident of the District of Columbia, contracted to supply services in the District of Columbia, caused tortious injury in the District of Columbia, had an interest in



EXHIBIT

A

real property in the District of Columbia, or acted as surety or insurer within the District of Columbia.

4.   I have been employed for many years in the education and education-consulting industry. One of my employers was Computer Curriculum Corporation. While there, I met Sandy Bienvenue, who worked for a competitor. Later, both Bienvenue and I worked for Compass Learning.

5.   Bienvenue left Compass Learning around May 2005. She told me she was going to work for America's Choice, Inc. ("ACI") as its "Director of Business Development, Southeast Region."

6.   Bienvenue began recruiting me to work for ACI and to handle ACI sales in two states in her Region – Louisiana and Arkansas. She would call and email me from her home office in Destin, Florida or from her cellular telephone (with Florida area code). When I expressed interest, Bienvenue set up two telephone interviews with two ACI managers.

7.   The first telephone interview was with Nick Solinger (sp?). Solinger identified himself as ACI's National Vice President of Sales. Solinger advised me that he was conducting the interview from his office in California. The second telephone interview was with Bob Lumsden. Lumsden advised me that he was conducting the interview from his home office in Georgia.

8.   ACI officially offered me a job on August 10, 2005 by email and regular mail. A copy of ACI's offer is attached as Exhibit "A-1."

9.   I accepted employment with ACI, in the position offered. A copy of my business card is attached as Exhibit "A-2."

10. Shortly after starting with ACI, I attended a training seminar in the District of Columbia. The seminar lasted two or three days, and I stayed at a hotel in the District of Columbia during that time. It was the only time I ever visited ACI's office.

11. I attended two other training seminars for ACI, but they were in Bethesda, Maryland and McLean, Virginia. Each seminar lasted two or three days. I flew into National Airport and stayed at hotels in Maryland and Virginia, respectively.

12. My primary contact during my tenure with ACI was Bienvenue. I communicated essentially daily with her, either by email or telephone to her office or her (Florida) cell phone. I would prepare expense reports online and send them to either Bienvenue or another ACI representative in Atlanta for approval. Occasionally, I would communicate via email or telephone with ACI personnel in the District of Columbia office.

13. I received my paycheck (base salary) and expense reimbursement via direct deposit into my bank account in Denham Springs, Louisiana. I have never had a bank account in the District of Columbia.

14. I worked for ACI until December 2006. During that time, I consummated sales in Louisiana and Arkansas for which I was never paid a commission. When ACI refused to pay me the commission I was entitled to, I resigned.

Further affiant sayeth not.

_____
Cecil Harris

Subscribed and sworn to before me this _15th_ day of March, 2007.

_____
NOTARY

VERA K. CRUMBY-NANCE
NOTARY PUBLIC
LA. BAR ROLL #28544
STATE OF LOUISIANA
My Commission Expires
At Death



## AMERICA'S
### C H O I C E.

*Changing Standards,*

*Changing Lives*

10 August 2005

Cecil Harris
8326 Harris Road
Denham Springs, LA 70726

Dear Cecil:

We are delighted that you decided to join the America's Choice, Inc. team as Business Development Manager, Louisiana and Arkansas territories. This letter outlines the major terms of your employment with America's Choice, Inc.

Your start date is August 16, 2005, with an annual salary of $105,000 plus a sales commission as defined by the FY2006 Sales Compensation Plan. The FY2006 Compensation Plan in current form is attached and subject to change by board resolution. Your position, classified as exempt, does not qualify for overtime pay. Sandra Bienvenu will be your supervisor. ACI reserves the right to change your position, duties and work location from time to time at its discretion.

Presently, ACI offers an excellent benefits package. Some highlights of the package include:

- Employer-paid medical and dental insurance for the employee. The employee is responsible for 20% of the cost for dependents. The coverage is effective the first day of employment.

- Employer-paid Life Insurance (1 X Annual Salary to a maximum of $100,000), Short-Term Disability, and Long-Term Disability effective the first day of the month following your start date.

- Twenty-five days of paid time off (PTO) prorated based on your start date, effective the date of employment.

- Six paid holidays

- Employer-paid Employee Assistance Program

- Tuition Reimbursement, up to $1,500 per calendar year

- Ten percent of your annual salary contributed to a 401(k) retirement plan with T. Rowe Price, effective the first day of the month following your start date. All funds will be fully vested upon your 3-year anniversary. You may also make supplemental contributions to your 401(k) plan with pre-tax dollars up to the calendar year limits specified by the IRS.

Please be aware that Paid Time Off benefits will be prorated to reflect your August 16, 2005 start date. ACI reserves the right to change benefits and providers at its discretion.

555 13th Street, NW

Suite 500 - West

Washington, DC 20004

[phone] 202 783 3668

[fax] 202 783 3672

[email] info@ncee.org

[web] www.ncee.org

## NCEE
**National Center On**
**EDUCATION**
**And The Economy** ®

**EXHIBIT**

A-1

Cecil Harris
10 August 2005
Page 2

As an ACI employee, you will be expected to abide by Company rules and policies, and acknowledge in writing that you have read the Company's Employee Policy Manual. As a condition of employment, you must sign and comply with the Assignment Agreement that prohibits unauthorized use or disclosure of ACI's proprietary information. You also agree that you will not bring onto the Company premises any unpublished documents belonging to any former employer or other person to whom you have an obligation of confidentiality. You represent that you have disclosed to the Company any contract you have signed that may restrict your activities on behalf of the Company.

You may terminate your employment with ACI at any time and for any reason whatsoever simply by notifying the Company. Likewise, ACI may terminate your employment at any time, with or without cause or advance notice. Your employment at-will status can only be modified in a written agreement signed by you and an officer of ACI.

This letter, together with your Assignment Agreement, forms the complete and exclusive statement of your employment agreement with ACI. It supersedes any and all other agreements or promises made to you by anyone, whether oral or written. Changes in your employment terms, other than those changes expressly reserved to the Company's discretion in this letter, require a written modification signed by an officer of the Company. As required by law, this offer is subject to satisfactory proof of your right to work in the United States.

More information about the ACI's benefits, along with several forms to complete is enclosed or will be provided to you shortly. Please sign and return one copy of this letter to indicate that you accept our offer. New employee paperwork should be returned prior to your start date.

We look forward to your favorable reply and to a productive work relationship.

Sincerely,

*Marietta S. Palmer*

Marietta S. Palmer
Director of Administration & Human Resources

Accepted: _____*Cecil Harris*_____     Date: _____
Cecil Harris



## AMERICA'S
### C H O I C E ®

**Cecil Harris**

Business Development Manager

Louisiana and Arkansas

8326 Harris Road

Denham Springs, LA 70726

{cell} 225 229 0081

{fax} 225 667 8625

{email} charris@americaschoice.org

{web} www.americaschoice.org

EXHIBIT

A–2

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICA'S CHOICE, INC.,<br>555 13th Street, N.W.<br>Suite 500 West<br>Washington, D.C. 20004,<br><br>    Plaintiff,<br><br>  v.<br><br>CECIL HARRIS<br>8326 Harris Road<br>Denham Springs, Louisiana 70726,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) CASE NUMBER 1:07CV00423<br>)<br>) JUDGE: Richard W. Roberts<br>)<br>) DECK TYPE: Contract<br>)<br>) DATE STAMP: 03/02/2007<br>)<br>)<br>) |

   Plaintiff America's Choice, Inc., by its attorneys Katten Muchin

Rosenman LLP, for its complaint herein against defendant Cecil Harris, respectfully

alleges:

### Jurisdiction and Venue

   1.  The subject matter jurisdiction of this Court is founded on 28 U.S.C.

§ 1332(a)(1), in that plaintiff is a citizen of the District of Columbia, and defendant is a

citizen of the State of Louisiana, and the amount in controversy, exclusive of interest

and costs, exceeds the sum or value of $75,000.00, all as hereinafter more fully

appears.

   2.  Venue is proper in this Judicial District pursuant to 28 U.S.C. §

1391(a)(3), in that defendant is subject to personal jurisdiction in the District of

Columbia, and to 28 U.S.C. § 1391(a)(2), in that the District of Columbia is a district



EXHIBIT

B

in which a substantial part of the alleged acts or omissions giving rise to the claim occurred.

## Nature of the Action

3. This is an action for declaratory relief concerning a contract, and seeks a declaratory judgment pursuant to 28 U.S.C. § 2201-2202.

## Parties

4. Plaintiff America's Choice, Inc. ("America's Choice") is a corporation duly organized and existing under the laws of the State of Delaware, and having its principal place of business in the District of Columbia.

5. Defendant Cecil Harris ("Harris") is a citizen of the State of Louisiana, residing in Denham Springs, Louisiana.

## Facts

6. America's Choice is engaged in the business of providing academic solutions through consultancy, publishing, professional development training, and materials and program offerings to public schools, public school districts, and states nationwide in connection with public school reform and improvement. America's Choice is a for-profit subsidiary of the National Center on Education and the Economy, a not-for-profit corporation.

7. On or about August 10, 2005, America's Choice and Harris entered into an employment relationship pursuant to which America's Choice would employ Harris as a salaried sales development associate.

8.    The employment relationship was documented in part by an offer letter and by various other documents relating to the policies and practices of America's Choice in paying sales commissions.

9.    The original compensation terms of Harris's employment were subject to change, and were in fact changed effective in the 2006-2007 fiscal year of America's Choice.  That fiscal year began July 1, 2006 and will terminate June 30, 2007.

10.  Harris voluntarily terminated his employment with America's Choice effective December 31, 2006.

11.  America's Choice has fully performed its obligations to Harris in respect of his employment relationship with America's Choice.

12.  Since the date of the termination of his employment, Harris has contended that America's Choice owes him substantial monies, exceeding $557,000, in the form of commissions allegedly due him as the result of his employment.

13.  America's Choice contends that it does not owe Harris any commissions whatsoever, and that it has paid Harris all compensation due to him in connection with his employment.

14.  There is an actual and existing concrete controversy between the parties relating to whether any commissions are due and owing to Harris in connection with his employment by America's Choice.

3

## CLAIM FOR RELIEF

### DECLARATORY JUDGMENT

15.  Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "14" of this complaint, as if fully set forth at length herein.

16.  The parties' dispute with respect to whether America's Choice owes Harris any sums as commissions pursuant to or in connection with his former employment relationship with America's Choice presents an actual controversy within the meaning of 28 U.S.C. § 2201.

17.  America's Choice seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that it does not owe Harris any sums as commissions pursuant to or in connection with his former employment relationship with America's Choice.

WHEREFORE, plaintiff America's Choice demands judgment against defendant Cecil Harris granting it an appropriate declaratory judgment and such other and further relief as the Court may deem just and proper in the circumstances.

Dated: Washington, D.C.
       March 2, 2007

KATTEN MUCHIN ROSENMAN LLP

By:_____
       Ugo Colella (D.C. Bar No. 473348)
       1025 Thomas Jefferson Street, N.W.
       East Lobby, Suite 700
       Washington, D.C. 20007
       Phone: (202) 625-3755
       Fax:    (202) 295-1174

Of Counsel:

Martin E. Karlinsky, Esq.
(D.C. Bar No. 447859)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
(212) 940-8800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CECIL HARRIS,

                               Plaintiff,                    Docket No.: **07 CV 1359**

      *-against-*                                    **COMPLAINT**

AMERICA'S CHOICE, INC.,                **JURY TRIAL DEMANDED**

                           Defendant.
-------------------------------------------------------------------X

        Plaintiff, Cecil Harris (hereinafter "Plaintiff"), by and through his attorneys, as and for his complaint alleges as follows:

### NATURE OF THE ACTION

        1.      The nature of this action is for the recovery of commissions earned, for breach of an employment agreement and a violation of the Louisiana State Labor Law committed by Defendant, resulting in damages to the Plaintiff.

### JURISDICTION AND VENUE

        2.      Jurisdiction is conferred by 28 U.S.C. Section 1332 as Plaintiff is a citizen of the State of Louisiana and Defendant is a Delaware Corporation with offices in New York within the Southern District and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000. Defendant qualified to do business in the State of New York on November 1, 2004.

        3.      Venue is proper in this District, pursuant to 28 U.S.C. Section 1391(a), because the Defendant has offices within this District and is conducting business activities in this District.

### THE PARTIES

        4.      Plaintiff is a resident of the State of Louisiana and resides at 8326 Harris Road,



Denham Springs, Louisiana 70726.

5.    Upon information and belief, Defendant America's Choice, Inc. (hereinafter

"Defendant"), is a corporation duly organized and existing under the laws of the state of

Delaware, having a place of business located at 39 Broadway, Suite 1850, New York, NY 10006.

### FACTS

6.    Upon information and belief, Defendant is engaged in, among other things,

providing educational materials and resources to schools, teachers and students from grades K

through 12.

7.    Pursuant to the terms of an employment agreement dated August 10, 2005 (the

"Employment Agreement") which was signed and accepted by Defendant and Plaintiff, Plaintiff

commenced employment with Defendant on or about August 16, 2005, and was employed

continuously by Defendant until December 31, 2006 when Plaintiff voluntarily resigned. A true

and complete copy of the Employment Agreement is annexed hereto and made a part hereof as

**Exhibit A**.

8.    Under the Employment Agreement, Plaintiff's employment position with the

Defendant was as Business Development Manager and his principal job duties included

soliciting and obtaining new customers and contracts for the Defendant in Louisiana and

Arkansas.

9.    The Employment Agreement also provides, that as to compensation for Plaintiff's

services, Defendant agreed to pay Plaintiff an annual salary of $105,000 "plus a sales

commission as defined by Defendants FY 2006 Sales Compensation Plan.

A true and complete copy of the FY 2006 Sales Compensation Plan is annexed hereto and made

a part hereof as **Exhibit B**. Under the express terms of the FY 2006 Sales Compensation Plan,

Plaintiff was assigned an annual sales quota of $1,500,000 ("Annual Quota") and was to receive

a bonus of $20,000 if the Annual Quota of $1,500,000 is met, as it was. Commissions were to be

paid on the percentage by which sales generated by Plaintiff met or exceeded the Annual Quota.

The rate of commission payable increased in percentage increments as shown on **Exhibit B** and

were based on the percentage of sales meeting or exceeding the Annual Quota.

10.     In or about the end of May, 2006, Plaintiff obtained and closed on a contract for

Defendant with The Arkansas Department of Education ("ADE") for which Defendant agreed,

upon information and belief, to provide ADE with delivery of "a comprehensive school

improvement model to forty-six low performing schools in Arkansas"; "to provide professional

development and training to the target schools"; and "to provide on-site technical assistance and

coaching". The contract price was $6,095,000.

11.     Defendant's contract with ADE, which was obtained for Defendant by Plaintiff,

was for a term of thirteen months, commencing on May 30, 2006.

12.     Upon information and belief, Defendant has received payment to date for services

in connection with its contract with ADE of a major portion of the contract amount of

$6,095.000. As a result, and based upon Plaintiff's Employment Agreement with Defendant,

Plaintiff was to receive a commission and bonus in the amount of $557,999.00. Annexed hereto

and made a part hereof as **Exhibit C** is a Schedule showing the commissions and bonus earned

by Plaintiff under the FY 2006 Sales Compensation Plan.

13.     Defendant has paid nothing to Plaintiff on account of such earned commission to

which Plaintiff was entitled in connection with Defendant's contract with ADE.

14.     To date, Defendant has acknowledged that it owes Plaintiff a commission for

"...services in connection with the Agreement by and between ACI and the State of Arkansas

3

Department of Education, dated as of May 30, 2006..." but has only offered to pay a commission equal to $160,000 in full settlement of the commissions earned instead of the commission of $557,999.00 Defendant is required to pay Plaintiff under the Employment Agreement. Even that offer was tied to restrictive conditions including a three (3) year non-compete agreement and waiver of Plaintiff's rights under various federal employment and anti-discrimination statutes. A true and complete copy of such offer, dated December 22, 2006 and signed by Defendant's Vice President for Legal and Business Affairs, is annexed hereto and made a part hereof as **Exhibit D**.

15.    Defendant owes unpaid wages to Plaintiff in the amount of approximately $557,999.00 consisting of the amount of commissions not paid to the Plaintiff as aforesaid, and the amount of commissions properly payable pursuant to the Employment Agreement, together with interest on the unpaid amount from the dates on which each portion of the commission were to have been paid pursuant to the Employment Agreement.

16.    Plaintiff has received no portion of said monies due and owing, although same has been duly demanded when said monies became due.

17.    Upon information and belief, Defendant's failure to pay the wages was willful.

## AS AND FOR A FIRST CAUSE OF ACTION

18.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "17" of this Complaint with the same force and effect as if set forth more fully at length herein.

19.    As a result of Defendant's breach of contract, Plaintiff has been damaged in the sum of approximately $557,999.00, with interest.

4

### AS AND FOR A SECOND CAUSE OF ACTION

20.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "19" of this Complaint with the same force and effect as if set forth more fully at length herein.

21.    From on or about August 16, 2005, until December 31, 2006, Plaintiff was an "employee" of Defendant, Defendant was an "employer" of the Plaintiff, and Defendant was obligated to pay "the amount then due under the terms of employment", as such terms are defined by Louisiana State Labor Law.

22.    Defendant's failure to pay all earned commissions is in violation of the Louisiana State Labor Law, specifically Louisiana Revised Statute 23:631.

23.    As a result of the Defendant's violation of the Louisiana State Labor Law, Plaintiff has been damaged in the sum of approximately $557,999.00, with interest.

24.    As a result of the Defendant's violation of the Louisiana State Labor Law, Plaintiff is entitled to an award of attorney's fees pursuant to Louisiana Revised Statute 23:632.

### AS AND FOR A THIRD CAUSE OF ACTION

25.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "24" of this Complaint with the same force and effect as if set forth more fully at length herein.

26.    Pursuant to Louisiana Revised Statute 23:631(B), in the event of a dispute as to the amount owed to Plaintiff, Defendant is required to pay Plaintiff the undisputed portion of the amount due to Plaintiff.

27.    As set forth in Paragraph 14 hereof, Defendant has previously admitted in writing to Plaintiff that it owes the amount of $160,000 to Plaintiff.

28.    However, Defendant has refused and continues to refuse to pay the aforesaid undisputed portion in violation of Louisiana Revised Statute 23:631(B).

29.    As a result of Defendant's violation of Louisiana Revised Statute 23:631(B), Plaintiff has been damaged in the sum of $160,000, with interest.

30.    As a result of the Defendant's violation of the Louisiana State Labor Law, Plaintiff is entitled to an award of attorney's fees pursuant to Louisiana Revised Statute 23:632.

**WHEREFORE**, Plaintiff respectfully requests judgment: (1) on the first claim in the amount of approximately $557,999.00, with interest thereon; (2) on the second claim in the amount of approximately $557,999.00 with interest thereon together with attorneys' fees; and (3) on the third claim in the amount of $160,000 with interest thereon together with attorneys' fees, together with the costs and disbursements of this action; and for such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues of this action.

Dated: New York, New York
       February 21, 2007

Yours, etc.

RICK STEINER FELL & BENOWITZ LLP

By: _____
      RAYMOND W. LEW, ESQ. (RL-4790)
      Attorney for Plaintiff,
      Three New York Plaza, 10th Floor
      New York, NY 10004
      (212) 422-0488

To:     AMERICA'S CHOICE, INC.
        39 Broadway, Suite 1850
        New York, NY  10006

```
                                          ┌─────────────────────────────┐
                                          │ USDS SDNY                   │
                                          │ DOCUMENT                    │
UNITED STATES DISTRICT COURT              │ ELECTRONICALLY FILED        │
SOUTHERN DISTRICT OF NEW YORK             │ DOC #: _____      │
------------------------------- X         │ DATE FILED: 2·27·07         │
CECIL HARRIS,                     :       └─────────────────────────────┘
                                  :
                    Plaintiff,    :
                                  :       07 CIV 1359(VM)
                                  :
          - against -             :
                                  :          ORDER
AMERICA'S CHOICE, INC.,           :
                                  :
                    Defendant.    :
-------------------------------- X
```

**VICTOR MARRERO, United States District Judge.**

   In reviewing the complaint and related attachments filed
in this matter the Court noted that plaintiff Cecil Harris
("Harris") asserts that he is a citizen of the State of
Louisiana and that defendant America's Choice, Inc.
("America's Choice") is a Delaware corporation with a place of
business in New York, New York. The complaint indicates that
the events that gave rise to the action occurred in connection
with Harris's employment with America's Choice as a business
development manager in Louisiana and Arkansas from August 2005
to December 31, 2006 pursuant to an agreement dated August 10,
2005 (the "Agreement"), a copy of which is attached to the
complaint. The Agreement is set forth on America's Choice's
letterhead showing an address of offices in Washington, D.C.
Also attached to the complaint is a copy of an offer of a
Severance Agreement and Release of All Claims dated December
22, 2006 which proposed to terminate Harris's employment with



America's Choice and which provides that it was to be governed by the laws of the District of Columbia. Based on these documents therefore appears that the connection of this action to this District is relatively insubstantial, and that in whole or in major part the material events, documents, persons and potential witnesses related to this action are located in the District for the District of Columbia or in a District in Louisiana. Accordingly, it is hereby

**ORDERED** that to aid the Court's assessment of whether, for the convenience to the parties and witnesses, in the interest of justice and sound judicial administration, venue for this matter more properly lies in the District for the District of Columbia or in a District in Louisiana, the Court directs plaintiff Cecil Harris ("Harris") to respond by March 2, 2007, in a letter to the Court not to exceed three (3) pages, showing cause why this matter should not be transferred to the District for the District of Columbia or to a District in Louisiana pursuant to 28 U.S.C. § 1404(a); and it is further hereby

**ORDERED** that Harris serve a copy of this Order on defendant America's Choice, through counsel if known, and that defendant may respond by letter not to exceed three (3) pages submitted to the Court by March 7, 2007.

-2-

SO ORDERED.

DATED:     NEW YORK, NEW YORK
           27 February 2007


                                    Victor Marrero
                                       U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CECIL HARRIS,

                    Plaintiff,            Case No.: 07 CV 1359

    *-against-*

AMERICA'S CHOICE, INC.,          **NOTICE OF DISMISSAL**
                                  **WITHOUT PREJUDICE**

                Defendant.
-----------------------------------------------------------------X

    Plaintiff, CECIL HARRIS ("Plaintiff"), by his attorneys RICK STEINER FELL &

BENOWITZ LLP, hereby gives notice in accordance with Rule 41(a)(1), Federal Rules of Civil

Procedure, of the voluntary dismissal of the above entitled action without order of the court.

With respect thereto, the Plaintiff states that no answer or motion for summary judgment has

been received by counsel for the Plaintiff. Such dismissal is without prejudice and is not on the

merits. There has been no prior dismissal in any court of the United States or of any state of an

action based on or including the same claim as presented by the Plaintiff in its complaint herein.

Dated: March 1, 2007

                                RICK STEINER FELL & BENOWITZ LLP
                                Attorneys for Plaintiff,
                                CECIL HARRIS

                                By:_____
                                  RAYMOND W. LEW, ESQ. (RL-4790)
                                3 New York Plaza, 10th Floor
                                New York, New York 10004
                                (212) 422-0488



EXHIBIT

E

```
************** -COMM. JOURNAL- ****************** DATE MAR-01-2007 ***** TIME 18:29 ********


     MODE = MEMORY TRANSMISSION          START=MAR-01 18:27    END=MAR-01 18:29

        FILE NO.=102

 STN   COMM.    ONE-TOUCH/    STATION NAME/EMAIL ADDRESS/TELEPHONE NO.    PAGES    DURATION
 NO.             ABBR NO.

 001    OK        ⓐ          12128945645                                002/002   00:00:46


                                                  -RSFB                       -

 ***** UF-7000 v2 ****************** -RSFB        - ***** -      1 212 422 0158- *********
```



**RICK STEINER FELL & BENOWITZ** LLP
A T T O R N E Y S   A T   L A W

NEW JERSEY OFFICE:
111 PATERSON AVENUE, HOBOKEN, NJ 07030
TEL: 201-798-6613 • FAX: 201-798-5070

WESTCHESTER OFFICE:
162 ROUTE 202, SOMERS, NY 10589
TEL: 914-277-7303 • FAX: 914-243-0310

THREE NEW YORK PLAZA, NEW YORK, NY 10004 • TEL: 212-422-0488 • FAX: 212-422-0158

## FACSIMILE COVER SHEET

DATE: 3/1/2007

TO: HON. VICTOR MARRERO

FAX NO.: (212) 805-~~5371~~ 6382

FROM: RAYMOND LEU, ESQ.

REFERENCE: CECIL HARRIS v. AMERICA'S CHOICE, INC.

CC: MARTIN E. KARLINSKY, ESQ. (212)894-5645
ATTORNEY FOR DEFENDANT AMERICA'S CHOICE, INC.

Number of Pages including this Cover Sheet   2

MESSAGE: ATTACHED IS A COURTESY COPY OF THE NOTICE OF DISMISSAL
WITHOUT PREJUDICE. A COPY OF THE ATTACHED NOTICE WAS E-MAILED
TO THE ORDERS AND JUDGMENT CLERK.

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the above address via the United States Postal Service. We will reimburse you for postage. Thank you.

If you do not receive all pages, or if any portions of
the transmission are illegible, please call (212) 422-0488

**EXHIBIT**

F

CECIL HARRIS

VERSUS

AMERICA'S CHOICE, INC.

DOCKET NO. 115193 SEC. G

21st JUDICIAL DISTRICT COURT

PARISH OF LIVINGSTON

STATE OF LOUISIANA

## PETITION FOR DAMAGES

Plaintiff Cecil Harris ("Harris"), a natural person domiciled in Livingston Parish, Louisiana, represents as follows:

1.

The following party is made defendant herein:

America's Choice, Inc. ("Defendant"), a foreign corporation doing business in Louisiana without authorization to do so and without having appointed a registered agent in Louisiana.

2.

This Court, consistent with constitutional due process, may exercise personal jurisdiction over Defendant because Defendant regularly does or solicits business in this state and/or this cause of action arises out of a contract made and to be performed in part in this state. La. R.S. 13:3201.

3.

Venue is proper in this parish because Harris is domiciled in this parish and Defendant is a nonresident having failed to appoint an agent for service of process in the manner provided by law. La. R.S. 13:3203; La. Code Civ. P. art 42(5).

4.

Defendant is engaged in, among other things, providing educational materials and resources to schools, teachers and students from grades Kindergarten through 12.



EXHIBIT

G

1

5.

Pursuant to the terms of an employment agreement dated August 10, 2005 (the "Employment Agreement") which was signed and accepted by Defendant and Harris, Harris commenced employment with Defendant on or about August 16, 2005 and was employed continuously by Defendant until December 31, 2006 when Harris voluntarily resigned. A true and complete copy of the Employment Agreement is annexed hereto and made a part hereof as Exhibit A.

6.

Under the Employment Agreement, Harris' employment position with the Defendant was as Business Development Manager, and his principal job duties included soliciting and obtaining new customers and contracts for Defendant in Louisiana and Arkansas.

7.

The Employment Agreement also provides, that as to compensation for Harris' services, Defendant agreed to pay Harris an annual salary of $105,000 "plus a sales commission as defined by Defendant's FY 2006 Sales Compensation Plan." A true and complete copy of the FY 2006 Sales Compensation Plan is annexed hereto and made a part hereof as Exhibit B.

8.

Under the express terms of the FY 2006 Sales Compensation Plan, Harris was assigned an annual sales quota of $1,500,000 ("Annual Quota") and was to receive a bonus of $20,000 if the Annual Quota was met, as it was. Commissions were to be paid on the percentage by which sales generated by Harris met or exceeded the Annual Quota. The rate of commission payable increased in percentage increments as shown on Exhibit B and were based on the percentage of sales meeting or exceeding the Annual Quota.

9.

In or about the end of May, 2006, Harris obtained and closed on a contract for Defendant with The Arkansas Department of Education ("ADE") for which Defendant agreed, upon information and belief, to provide ADE with delivery of "a comprehensive school improvement model to forty-six low performing schools in Arkansas;" "to provide professional development and training to the target schools;" and "to provide on-site technical assistance and coaching."

10.

The contract price was $6,095,000.

11.

Defendant's contract with ADE, which was obtained for Defendant by Harris, was for a term of thirteen months, commencing on May 30, 2006.

12.

Upon information and belief, Defendant has received payment to date for services in connection with its contract with ADE of a major portion of the contract amount of $6,095.000.   As a result, and based upon Harris' Employment Agreement with Defendant, Harris was to receive a commission and bonus in the amount of $557,999.00. Annexed hereto and made a part hereof as Exhibit C is a Schedule showing the commissions and bonus earned by Harris under the FY 2006 Sales Compensation Plan.

13.

Defendant has paid nothing to Harris on account of such earned commission to which Harris was entitled in connection with Defendant's contract with ADE.

14.

Defendant owes unpaid wages to Harris in the amount of approximately $557,999.00 consisting of the amount of commissions not paid to Harris as aforesaid, and the amount of commissions properly payable pursuant to the Employment Agreement, together with interest on the unpaid amount from the dates on which each portion of the commission were to have been paid pursuant to the Employment Agreement.

15.

Harris has received no portion of said monies due and owing, although same has been duly demanded when said monies became due.

16.

Upon information and belief, Defendant's failure to pay the wages was willful.

17.

As a result of Defendant's breach of contract, Harris has been damaged in the sum of approximately $557,999.00, with interest.

18.

From on or about August 16, 2005, until December 31, 2006, Harris was an "employee" of Defendant, Defendant was an "employer" of the Harris, and Defendant was obligated to pay "the amount then due under the terms of employment," as such terms are defined by Louisiana State Labor Law.

19.

Defendant's failure to pay all earned commissions is in violation of the Louisiana State Labor Law, specifically La. R.S. 23:631.

20.

As a result of the Defendant's violation of the Louisiana State Labor Law, Harris has been damaged in the sum of approximately $557,999.00, with interest.

21.

As a result of the Defendant's violation of the Louisiana State Labor Law, Harris

is entitled to an award of attorney's fees pursuant to La. R.S. 23:632.

22.

S. Bradley Rhorer and V. Katharine Crumby-Nance hereby request written notice

of the day of trial in this matter, as well as notice of hearings, whether on the merits or

otherwise, orders, judgments and interlocutory decrees, and any and all formal steps

taken by the parties herein, the Judge or any member of Court, as provided in the

Louisiana Code of Civil Procedure.


**WHEREFORE**, Harris requests that citation issue and after due proceedings had

that there be judgment in favor of Harris and against Defendant in the amount of

$557,999.00, together with attorney fees, legal interest, costs, and all such other relief as

law, equity and the nature of this case may allow.


Respectfully Submitted:

**RHORER LAW FIRM**


S. Bradley Rhorer
Louisiana Bar No. 25487
V. Katharine Crumby-Nance
Louisiana Bar No. 28544
10566 Airline Highway
Baton Rouge, Louisiana  70816
(225) 292-2767
(225) 292-2769 (fax)


<u>**PLEASE SERVE:**</u>

**America's Choice, Inc.**
Via long arm statute

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICA'S CHOICE, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Case No. 1:07CV00423 RWR** |
| | ) |
| **CECIL HARRIS,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>ORDER</u>

UPON CONSIDERATION OF Defendant Cecil Harris' Motion to Dismiss, or alternatively, to Stay; it is hereby

ORDERED that Defendant's Motion to Dismiss, or alternatively to Stay is GRANTED.

ENTERED THIS _____ day of _____, 2007.


_____
Judge Richard W. Roberts

COPIES TO:

Andrew J. Terrell, Esq.
Whiteford, Taylor & Preston
1025 Connecticut Ave., N.W.
Suite 400
Washington, DC   20036

S. Bradley Rhorer, Esq.
Rhorer Law Firm
10566 Airline Highway
Baton Rouge, LA  70816

Robert J. Benowitz, Esquire
Rick Steiner Fell & Benowitz, LLP
Three New York Place
New York, New York  10004

Ugo A. Colella, Esquire
KATTEN MUCHIN ROSENMAN, LLP
1025 Thomas Jefferson Street, NW
Suite 700
Washington, DC 20007