## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICA'S CHOICE, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 1:07CV00423 RWR** |
| | ) |
| **CECIL HARRIS,** | ) |
| | ) |
| **Defendant.** | ) |

### DEFENDANT CECIL HARRIS' MOTION TO DISMISS
### PURSUANT TO FED. R. CIV. P. 12(b)(2)[1]

COMES NOW Defendant Cecil Harris ("Mr. Harris") with his Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and in support thereof states as follows:

1.      Defendant Mr. Harris incorporates his Memorandum of Points and Authorities in Support of his Motion as though fully set forth herein.

WHEREFORE, for the reasons set forth herein, the Defendant, Cecil Harris, moves this Honorable Court for entry of an Order dismissing this case, awarding the Defendant his costs for having to defend this matter, and for such other further relief as the Court deems just and proper.

Respectfully submitted,

**WHITEFORD, TAYLOR & PRESTON, LLP**

_//s// Andrew J. Terrell_
Andrew J. Terrell (#431362)
Kevin A. Kernan (#457194)
1025 Connecticut Avenue, N.W., Suite 400
Washington, D.C.  20037
(202) 659-6800
(202) 331-0573 (facsimile)

---

[1] Harris has concurrently filed a Motion to Dismiss, or alternatively to Stay, this case in deference to Harris' breach of contract suit currently pending in Louisiana.  The basis of that motion is ACI's attempt to improperly use the Declaratory Judgment Act as a forum-shopping tool to deny Harris, the natural plaintiff, his choice of forum.

**OF COUNSEL:**
**RHORER LAW FIRM**

*//s// S. Bradley Rhorer, Esquire*
S. Bradley Rhorer, Esquire
10566 Airline Highway
Baton Rouge, Louisiana 70816
(225) 292-2767
(225) 292-2769 (facsimile)


**RICK STEINER FELL & BENOWITZ,**
**LLP**


*//s// Robert J. Benowitz, Esquire*
Robert J. Benowitz, Esquire
Three New York Place
New York, New York 10004
(212)422-0488
(212) 422-0158 (facsimile)

*Counsel for Defendant, Cecil Harris*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.4(d), service of the foregoing was made electronically through Court's CM/ECF system.


*//s// Andrew J. Terrell*
Andrew J. Terrell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMERICA'S CHOICE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07CV00423 RWR** |
| | ) | |
| **CECIL HARRIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT CECIL HARRIS' MEMORANDUM IN SUPPORT OF**
**ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

America's Choice, Inc. ("ACI") brought this improper declaratory judgment suit against Cecil Harris ("Harris")[2] – a resident of Louisiana and former salesperson for ACI with a geographic sales territory of Louisiana and Arkansas – for a declaration that ACI does not owe Harris any commissions on sales Harris made in Louisiana and Arkansas. Harris lacks sufficient contacts with the District of Columbia to constitutionally permit this Court's exercise of jurisdiction over Harris' person. Accordingly, Harris moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), as follows:

## I. FACTS

Harris is a resident of Denham Springs, Louisiana. Harris was born in Louisiana, grew up in Louisiana, went to school in Louisiana, married in Louisiana, and raised his family in Louisiana. Harris has never lived anywhere other than Louisiana. Affidavit of Cecil Harris, attached as Exhibit "A," at ¶2.

---

[2]Harris has concurrently herewith filed a motion to dismiss, or alternatively stay, this case in deference to Harris' breach of contract suit currently pending in Louisiana. The basis of that motion is ACI's attempt to improperly use the Declaratory Judgment Act as a forum-shopping tool to deny Harris, the natural plaintiff, his choice of forum.

Harris has never been a resident of the District of Columbia. Harris has never contracted to supply services in the District of Columbia. Harris has never caused tortious injury in the District of Columbia. Harris has never had an interest in real property in the District of Columbia. Harris has never acted as surety or insurer within the District of Columbia. Exhibit "A," at ¶3.

Harris has been employed in the education and education-consulting industry for many years. In that context, Harris met Sandy Bienvenue, originally a competitor and later a co-worker of Harris's. Bienvenue left their co-employer in or around May 2005 and began working for ACI as ACI's "Director of Business Development, Southeast Region." Exhibit "A," at ¶¶4-5.

ACI is in the education-consulting business. Although its principal office is in the District of Columbia, ACI conducts business nationwide. ACI Complaint at ¶¶4, 6.

Bienvenue immediately began recruiting Harris to work for ACI and to handle ACI sales in two states in Bienvenue's Region – Harris' home state of Louisiana and the neighboring state of Arkansas. She would call or email Harris from her home office in Destin, Florida or from her cellular telephone (with Florida area code). When Harris expressed interest, Bienvenue set up two telephone interviews between Harris and two ACI managers. Exhibit "A," at ¶6.

The first telephone interview was with Nick Solinger (sp?). Solinger identified himself as ACI's National Sales Manager. Solinger advised Harris that Solinger was conducting the interview from his office in California. Exhibit "A," at ¶7.

The second telephone interview was with Bob Lumsden. Lumsden advised Harris that he was conducting the interview from his office in Atlanta, Georgia. Exhibit "A," at ¶7.

ACI officially offered Harris employment on August 10, 2005 by email and regular mail addressed to Harris's Louisiana address. A copy of ACI's offer is attached as Exhibit "A-1."

The offer identifies Harris's position as "Business Development Manager, Louisiana and Arkansas territories." Exhibit A-2. ACI agreed to pay Harris a base salary plus a commission dependent on his sales performance. *See* Exhibit "A-1."

Harris accepted employment with ACI, in the position offered. A copy of Harris's business card is attached as Exhibit "A-2." The business card identifies Harris's office address as a Louisiana address and his telephone number as a Louisiana telephone number. *See* Exhibit "A-2."

Shortly after his employment with ACI, Harris did attend a training seminar in the District of Columbia. The seminar lasted two or three days, and Harris stayed at a hotel in the District of Columbia during that time. It was the only time Harris ever visited ACI's offices. Exhibit "A," at ¶10.

Harris attended two other training seminars for ACI, but they were in Bethesda, Maryland and McLean, Virginia, respectively. Each seminar lasted two or three days. Harris flew into an airport in Arlington, Virginia, but stayed at hotels in Maryland and Virginia, respectively. Exhibit "A," at ¶11.

Harris's primary contact during his tenure with ACI was Bienvenue. He communicated essentially daily with Bienvenue, either by email or telephone to Bienvenue's office or her (Florida) cell phone. Harris would prepare expense reports online and send them to either Bienvenue or another ACI representative in Atlanta for approval. Occasionally, Harris would communicate via email or telephone with ACI personnel in the District of Columbia office. Exhibit "A," at ¶12.

Harris received his paycheck (base salary) and expense reimbursement via direct deposit into his bank account in Denham Springs, Louisiana. Harris has never had a bank account in the District of Columbia. Exhibit "A," at ¶13.

Harris worked for ACI until December 2006. During that time, Harris contends he consummated sales in Louisiana and Arkansas that triggered his commission. When ACI refused to pay Harris the commission Harris contends he was entitled to, Harris resigned. Exhibit "A," at ¶14.

## II. <u>LAW</u>

A defendant cannot be subject to personal jurisdiction in this Court unless he has purposefully established "minimum contacts with [the district] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [him]self of the privilege of conducting activities with the [district], thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v. Superior Ct. of Cal.,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In other words, "the defendant's conduct and connection with the forum [district must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The plaintiff "carr[ies] the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over the defendants." *Murphy v. PriceWaterhouseCoopers LLP,* 357 F.Supp.2d 230, 242 (D.D.C. 2004). "[T]he general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exchange Co.,*

6

836 F.2d 1375, 1378 (D.C. Cir. 1988). Conclusory statements "do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction." *Id.*, *citing Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C. Cir.1983). "In order to successfully carry its burden, the plaintiff must allege "specific facts that demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws.'" *Brunson v. Kalil & Co., Inc.,* 404 F.Supp.2d 221, 226 (D.D.C. 2005), *citing Helmer v. Doletskaya,* 290 F.Supp.2d 61, 66 (D.D.C. 2003), *rev'd on other grounds*, 393 F.3d 201 (D.C. Cir. 2004).

The determination of whether this Court can constitutionally maintain personal jurisdiction over a nonresident involves a two-part inquiry. First, the Court must examine whether jurisdiction is applicable under the District of Columbia's long-arm statute. Then the Court must determine whether a finding of jurisdiction satisfies the constitutional requirements of due process. *Brunson,* 404 F.Supp.2d at 226, *citing GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000).

The District of Columbia's long arm statute provides in pertinent part[3] that "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). To establish personal jurisdiction under this subsection, a plaintiff must demonstrate that: (1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend

---

[3]ACI fails to identify the specific provision of the District of Columbia's long arm statute it contends confers jurisdiction. *See*, *generally*, ACI Complaint. Harris assumes that ACI must be contending jurisdiction under the "transacting any business" subsection of the long arm statute.

"traditional notions of fair play and substantial justice." *Atlantigas Corp. v. Nisource, Inc.,* 290 F.Supp.2d at 43, *citing Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 71 (D.D.C. 1992). "The claim itself must have arisen from the business transacted in the District of Columbia or there is no jurisdiction." *Novak-Canzeri v. Al Saud,* 864 F.Supp. 203, 206 (D.D.C.1994).

### III.  **ANALYSIS**

It is undisputed that Harris is a nonresident of the District of Columbia.  Exhibit "A" at ¶2; ACI's Complaint at ¶5.  Accordingly, this Court must first examine whether jurisdiction is applicable under the District of Columbia's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process.  *Brunson,* 404 F.Supp.2d at 226.

ACI fails to allege any "specific jurisdictional facts."  ACI states only that "defendant is subject to personal jurisdiction in the District of Columbia."  ACI's Complaint at ¶2; *see also First Chicago Int'l,* 836 F.2d at 1378 (D.C. Cir. 1988)(conclusory statements not *prima facie* showing); *Brunson,* 404 F.Supp.2d at 226 (D.D.C. 2005)(plaintiff must allege specific facts demonstrating purposeful activity seeking to invoke benefits and protections of the District of Columbia's laws).  Harris assumes that ACI must be contending that by accepting employment with ACI Harris "transacted business" in the District of Columbia.  *See* ACI's Complaint at ¶7.

Entering into a contract with a District of Columbia resident does not, in and of itself constitute a contact with the district sufficient to warrant the exercise of jurisdiction.  *Creighton, Ltd. v. Government of Qatar*, 181 F.3d 118, 127 (D.C. Cir. 1999)("[T]he Supreme Court has squarely rejected the proposition that 'an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum.'"), *quoting   Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528

(1985). Rather, it is the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" that controls. *Id.*.

All pre-contract negotiations between Harris and ACI took place via telephone. *See* Exhibit "A," at ¶7. ACI personnel were, during the negotiations, in various places *all other than* the District of Columbia. Harris, during all negotiations, was in Louisiana. *See id*. Thus, the "prior negotiations" bear no relation to the District of Columbia. *See Creighton,* 181 F.3d at 127.

The negotiations culminated in a contract specifying that Harris's geographical sales territory would be Louisiana and Arkansas. *See* Exhibit "A-1." Necessarily, the contract contemplated performance in Louisiana and Arkansas. Harris discharged his obligations from his home office in Denham Springs, Louisiana. The sales that formed the basis of the commission dispute between Harris and ACI, were all in Louisiana and Arkansas. *See* Exhibit "A-2." Thus, the "future consequences" of the parties' negotiations and contract were elsewhere than the District of Columbia. *See Creighton,* 181 F.3d at 127. *See also MMR Holding Corp. v. Sweetster*, 675 F.Supp. 326 (M.D.La. 1987)(in Louisiana corporation's declaratory judgment suit regarding employment contract, court lacked jurisdiction over corporation's former division manager who resided in Virginia and performed his employment contract in Virginia and in states other than Louisiana).

Harris's ACI-related contact with the District of Columbia was limited to (1) attendance of a training seminar at ACI's office; (2) flying into a District of Columbia airport for two other training seminars in Virginia and Maryland; and (3) occasional email, fax, and telephonic communications with ACI's office. It cannot be seriously contended that this claim arose out of his three-day training seminar in the District of Columbia, or passing through a District of Columbia airport, or occasionally communicating with ACI in the District of Columbia. Such

contacts do not suffice as "minimum contacts" sufficient to support jurisdiction.  *See FC Inv. Group LC v. IFX Markets, Ltd.*, ___ F.Supp.2d ___, Civil Action No. 04-1939 (PLF) (02/06/07) at p. 9, 2007 WL 325355 (D.D.C.)("The Court concludes that defendant's "regular" phone calls into the District of Columbia from elsewhere do not constitute "transacting business" in the District of Columbia.") and cases cited therein; *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777-78 (5th Cir. 1986)(entering into contract with plaintiff Texas corporation, sending final revised joint operating agreement from Oklahoma to Texas, sending three checks from Oklahoma to Texas in partial performance of contractual obligations, and engaging in extensive telephonic an written communications with plaintiff in Texas not sufficient minimum contacts by Oklahoma defendant where material performance was in Oklahoma.).  Maintaining this suit against Harris would be fundamentally unfair to Harris. *See  International Shoe Co.,* 326 U.S. at 316.

## IV.  CONCLUSION

The controversy between Harris and ACI relates to services Harris provided in Louisiana and Arkansas, not in the District of Columbia.  Harris, a nonresident of the District of Columbia, lacks sufficient minimum contacts with the District such that maintaining this suit would not offend traditional notions of fair play and substantial justice.  Dismissal is warranted.

WHEREFORE, for the reasons set forth herein, the Defendant Cecil Harris moves this Honorable Court for entry of an Order dismissing this case, awarding the Defendant his costs for having to defend this matter and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

**WHITEFORD, TAYLOR & PRESTON, LLP**

*//s// Andrew J. Terrell*
Andrew J. Terrell (#431362)
Kevin A. Kernan (#457194)
1025 Connecticut Avenue, N.W., Suite 400
Washington, D.C.  20037
(202) 659-6800
(202) 331-0573 (facsimile)

**OF COUNSEL:**
**RHORER LAW FIRM**

*//s// S. Bradley Rhorer*
S. Bradley Rhorer, Esquire
10566 Airline Highway
Baton Rouge, Louisiana  70816
(225) 292-2767
(225) 292-2769 (facsimile)

**RICK STEINER FELL & BENOWITZ, LLP**

*//s// Robert J. Benowitz, Esquire*
Robert J. Benowitz, Esquire
Three New York Place
New York, New York  10004
(212)422-0488
(212) 422-0158 (facsimile)

*Counsel for Defendant, Cecil Harris*

11

**IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICA'S CHOICE, INC.,                    )
555 13th Street, N.W.                       )
Washington, D.C.  20004,                    )
                                                             )
      PLAINTIFF                           )
                                                             )        CASE NUMBER:
v.                                                          )
                                                             )        1:07CV00423 RWR
CECIL HARRIS,                                     )
8326 Harris Road                                   )
Denham Springs, Louisiana 70726,     )
                                                             )
      DEFENDANT                        )

### AFFIDAVIT OF CECIL HARRIS

PARISH OF LIVINGSTON

STATE OF LOUISIANA

     Before me, the undersigned notary, in and for the parish and state aforesaid, personally came

and appeared Cecil Harris who upon his oath deposed and stated as follows:

1.     My name is Cecil Harris.  I have personal knowledge of the facts stated herein, and same are

     true and correct.

2.     I live in Denham Springs, Louisiana.  I was born in Louisiana, grew up in Louisiana, went

     to school in Louisiana, married in Louisiana, and raised my family in Louisiana.  I have never

     lived anywhere other than Louisiana.

3.     I have never been a resident of the District of Columbia, contracted to supply services in the

     District of Columbia, caused tortious injury in the District of Columbia, had an interest in



real property in the District of Columbia, or acted as surety or insurer within the District of Columbia.

4.  I have been employed for many years in the education and education-consulting industry. One of my employers was Computer Curriculum Corporation. While there, I met Sandy Bienvenue, who worked for a competitor. Later, both Bienvenue and I worked for Compass Learning.

5.  Bienvenue left Compass Learning around May 2005. She told me she was going to work for America's Choice, Inc. ("ACI") as its "Director of Business Development, Southeast Region."

6.  Bienvenue began recruiting me to work for ACI and to handle ACI sales in two states in her Region – Louisiana and Arkansas. She would call and email me from her home office in Destin, Florida or from her cellular telephone (with Florida area code). When I expressed interest, Bienvenue set up two telephone interviews with two ACI managers.

7.  The first telephone interview was with Nick Solinger (sp?). Solinger identified himself as ACI's National Vice President of Sales. Solinger advised me that he was conducting the interview from his office in California. The second telephone interview was with Bob Lumsden. Lumsden advised me that he was conducting the interview from his home office in Georgia.

8.  ACI officially offered me a job on August 10, 2005 by email and regular mail. A copy of ACI's offer is attached as Exhibit "A-1."

9.  I accepted employment with ACI, in the position offered. A copy of my business card is attached as Exhibit "A-2."

10.     Shortly after starting with ACI, I attended a training seminar in the District of Columbia. The seminar lasted two or three days, and I stayed at a hotel in the District of Columbia during that time. It was the only time I ever visited ACI's office.

11.     I attended two other training seminars for ACI, but they were in Bethesda, Maryland and McLean, Virginia. Each seminar lasted two or three days. I flew into National Airport and stayed at hotels in Maryland and Virginia, respectively.

12.     My primary contact during my tenure with ACI was Bienvenue. I communicated essentially daily with her, either by email or telephone to her office or her (Florida) cell phone. I would prepare expense reports online and send them to either Bienvenue or another ACI representative in Atlanta for approval. Occasionally, I would communicate via email or telephone with ACI personnel in the District of Columbia office.

13.     I received my paycheck (base salary) and expense reimbursement via direct deposit into my bank account in Denham Springs, Louisiana. I have never had a bank account in the District of Columbia.

14.     I worked for ACI until December 2006. During that time, I consummated sales in Louisiana and Arkansas for which I was never paid a commission. When ACI refused to pay me the commission I was entitled to, I resigned.

Further affiant sayeth not.

_____
Cecil Harris

Subscribed and sworn to before me this 15th day of March, 2007.

_____
NOTARY

VERA K. CRUMBY-NANCE
NOTARY PUBLIC
LA. BAR ROLL #28544
STATE OF LOUISIANA
My Commission Expires
At Death



**AMERICA'S**
**C H O I C E.**

*Changing Standards,*
*Changing Lives*

10 August 2005

Cecil Harris
8326 Harris Road
Denham Springs, LA 70726

Dear Cecil:

We are delighted that you decided to join the America's Choice, Inc. team as Business Development Manager, Louisiana and Arkansas territories. This letter outlines the major terms of your employment with America's Choice, Inc.

Your start date is August 16, 2005, with an annual salary of $105,000 plus a sales commission as defined by the FY2006 Sales Compensation Plan. The FY2006 Compensation Plan in current form is attached and subject to change by board resolution. Your position, classified as exempt, does not qualify for overtime pay. Sandra Bienvenu will be your supervisor. ACI reserves the right to change your position, duties and work location from time to time at its discretion.

Presently, ACI offers an excellent benefits package. Some highlights of the package include:

- Employer-paid medical and dental insurance for the employee. The employee is responsible for 20% of the cost for dependents. The coverage is effective the first day of employment.

- Employer-paid Life Insurance (1 X Annual Salary to a maximum of $100,000), Short-Term Disability, and Long-Term Disability effective the first day of the month following your start date.

- Twenty-five days of paid time off (PTO) prorated based on your start date, effective the date of employment.

- Six paid holidays

- Employer-paid Employee Assistance Program

- Tuition Reimbursement, up to $1,500 per calendar year

- Ten percent of your annual salary contributed to a 401(k) retirement plan with T. Rowe Price, effective the first day of the month following your start date. All funds will be fully vested upon your 3-year anniversary. You may also make supplemental contributions to your 401(k) plan with pre-tax dollars up to the calendar year limits specified by the IRS.

Please be aware that Paid Time Off benefits will be prorated to reflect your August 16, 2005 start date. ACI reserves the right to change benefits and providers at its discretion.

555 13th Street, NW

Suite 500 - West

Washington, DC 20004

(phone) 202 783 3668

(fax) 202 783 3672

(email) info@ncee.org

(web) www.ncee.org

**NCEE**
National Center On
**EDUCATION**
And The Economy

**EXHIBIT**

A-1

Cecil Harris
10 August 2005
Page 2

As an ACI employee, you will be expected to abide by Company rules and
policies, and acknowledge in writing that you have read the Company's
Employee Policy Manual.  As a condition of employment, you must sign and
comply with the Assignment Agreement that prohibits unauthorized use or
disclosure of ACI's proprietary information.  You also agree that you will
not bring onto the Company premises any unpublished documents
belonging to any former employer or other person to whom you have an
obligation of confidentiality.  You represent that you have disclosed to the
Company any contract you have signed that may restrict your activities on
behalf of the Company.

You may terminate your employment with ACI at any time and for any
reason whatsoever simply by notifying the Company.  Likewise, ACI may
terminate your employment at any time, with or without cause or advance
notice.  Your employment at-will status can only be modified in a written
agreement signed by you and an officer of ACI.

This letter, together with your Assignment Agreement, forms the complete
and exclusive statement of your employment agreement with ACI.  It
supersedes any and all other agreements or promises made to you by
anyone, whether oral or written.  Changes in your employment terms, other
than those changes expressly reserved to the Company's discretion in this
letter, require a written modification signed by an officer of the Company.
As required by law, this offer is subject to satisfactory proof of your right to
work in the United States.

More information about the ACI's benefits, along with several forms to
complete is enclosed or will be provided to you shortly.  Please sign and
return one copy of this letter to indicate that you accept our offer.  New
employee paperwork should be returned prior to your start date.

We look forward to your favorable reply and to a productive work
relationship.

Sincerely,

Marietta S. Palmer
Director of Administration & Human Resources

Accepted: _____     Date: _____
Cecil Harris



# AMERICA'S
## C H O I C E ®

**Cecil Harris**

Business Development Manager

Louisiana and Arkansas

8326 Harris Road

Denham Springs, LA 70726

{cell} 225 229 0081

{fax} 225 667 8625

{email} charris@americaschoice.org

{web} www.americaschoice.org

EXHIBIT

A–2

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICA'S CHOICE, INC.,           )
555 13th Street, N.W.             )
Suite 500 West                    )
Washington, D.C. 20004,           )
                                   CASE NUMBER   1:07CV00423

            Plaintiff,
                                   JUDGE: Richard W. Roberts

      v.
                                   DECK TYPE: Contract

CECIL HARRIS                       DATE STAMP: 03/02/2007
8326 Harris Road
Denham Springs, Louisiana 70726,  )
                                  )
            Defendant.            )
                                  )

Plaintiff America's Choice, Inc., by its attorneys Katten Muchin

Rosenman LLP, for its complaint herein against defendant Cecil Harris, respectfully

alleges:

### Jurisdiction and Venue

1.  The subject matter jurisdiction of this Court is founded on 28 U.S.C.

§ 1332(a)(1), in that plaintiff is a citizen of the District of Columbia, and defendant is a

citizen of the State of Louisiana, and the amount in controversy, exclusive of interest

and costs, exceeds the sum or value of $75,000.00, all as hereinafter more fully

appears.

2.  Venue is proper in this Judicial District pursuant to 28 U.S.C. §

1391(a)(3), in that defendant is subject to personal jurisdiction in the District of

Columbia, and to 28 U.S.C. § 1391(a)(2), in that the District of Columbia is a district



EXHIBIT

B

in which a substantial part of the alleged acts or omissions giving rise to the claim occurred.

## Nature of the Action

3.  This is an action for declaratory relief concerning a contract, and seeks a declaratory judgment pursuant to 28 U.S.C. § 2201-2202.

## Parties

4.  Plaintiff America's Choice, Inc. ("America's Choice") is a corporation duly organized and existing under the laws of the State of Delaware, and having its principal place of business in the District of Columbia.

5.  Defendant Cecil Harris ("Harris") is a citizen of the State of Louisiana, residing in Denham Springs, Louisiana.

## Facts

6.  America's Choice is engaged in the business of providing academic solutions through consultancy, publishing, professional development training, and materials and program offerings to public schools, public school districts, and states nationwide in connection with public school reform and improvement. America's Choice is a for-profit subsidiary of the National Center on Education and the Economy, a not-for-profit corporation.

7.  On or about August 10, 2005, America's Choice and Harris entered into an employment relationship pursuant to which America's Choice would employ Harris as a salaried sales development associate.

2

8.   The employment relationship was documented in part by an offer letter and by various other documents relating to the policies and practices of America's Choice in paying sales commissions.

9.   The original compensation terms of Harris's employment were subject to change, and were in fact changed effective in the 2006-2007 fiscal year of America's Choice.  That fiscal year began July 1, 2006 and will terminate June 30, 2007.

10.  Harris voluntarily terminated his employment with America's Choice effective December 31, 2006.

11.  America's Choice has fully performed its obligations to Harris in respect of his employment relationship with America's Choice.

12.  Since the date of the termination of his employment, Harris has contended that America's Choice owes him substantial monies, exceeding $557,000, in the form of commissions allegedly due him as the result of his employment.

13.  America's Choice contends that it does not owe Harris any commissions whatsoever, and that it has paid Harris all compensation due to him in connection with his employment.

14.  There is an actual and existing concrete controversy between the parties relating to whether any commissions are due and owing to Harris in connection with his employment by America's Choice.

## CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

15. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "14" of this complaint, as if fully set forth at length herein.

16. The parties' dispute with respect to whether America's Choice owes Harris any sums as commissions pursuant to or in connection with his former employment relationship with America's Choice presents an actual controversy within the meaning of 28 U.S.C. § 2201.

17. America's Choice seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that it does not owe Harris any sums as commissions pursuant to or in connection with his former employment relationship with America's Choice.

WHEREFORE, plaintiff America's Choice demands judgment against defendant Cecil Harris granting it an appropriate declaratory judgment and such other and further relief as the Court may deem just and proper in the circumstances.

Dated: Washington, D.C.
March 2, 2007

KATTEN MUCHIN ROSENMAN LLP

By: _____
Ugo Colella (D.C. Bar No. 473348)
1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, D.C. 20007
Phone: (202) 625-3755
Fax:    (202) 295-1174

4

Of Counsel:

Martin E. Karlinsky, Esq.
(D.C. Bar No. 447859)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
(212) 940-8800

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CECIL HARRIS,

                              Plaintiff,                    Docket No.: 07 CV 1359

        -against-                                          **COMPLAINT**

AMERICA'S CHOICE, INC.,                                    **JURY TRIAL DEMANDED**


                              Defendant.
-------------------------------------------------------------------X


Plaintiff, Cecil Harris (hereinafter "Plaintiff"), by and through his attorneys, as and for

his complaint alleges as follows:

### NATURE OF THE ACTION

1.      The nature of this action is for the recovery of commissions earned, for breach of

an employment agreement and a violation of the Louisiana State Labor Law committed by

Defendant, resulting in damages to the Plaintiff.

### JURISDICTION AND VENUE

2.      Jurisdiction is conferred by 28 U.S.C. Section 1332 as Plaintiff is a citizen of the

State of Louisiana and Defendant is a Delaware Corporation with offices in New York within the

Southern District and the matter in controversy exceeds, exclusive of interest and costs, the sum

of $75,000.  Defendant qualified to do business in the State of New York on November 1, 2004.

3.      Venue is proper in this District, pursuant to 28 U.S.C. Section 1391(a), because

the Defendant has offices within this District and is conducting business activities in this District.

### THE PARTIES

4.      Plaintiff is a resident of the State of Louisiana and resides at 8326 Harris Road,



1.

Denham Springs, Louisiana 70726.

5.      Upon information and belief, Defendant America's Choice, Inc. (hereinafter "Defendant"), is a corporation duly organized and existing under the laws of the state of Delaware, having a place of business located at 39 Broadway, Suite 1850, New York, NY 10006.

## FACTS

6.      Upon information and belief, Defendant is engaged in, among other things, providing educational materials and resources to schools, teachers and students from grades K through 12.

7.      Pursuant to the terms of an employment agreement dated August 10, 2005 (the "Employment Agreement") which was signed and accepted by Defendant and Plaintiff, Plaintiff commenced employment with Defendant on or about August 16, 2005, and was employed continuously by Defendant until December 31, 2006 when Plaintiff voluntarily resigned. A true and complete copy of the Employment Agreement is annexed hereto and made a part hereof as **Exhibit A**.

8.      Under the Employment Agreement, Plaintiff's employment position with the Defendant was as Business Development Manager and his principal job duties included soliciting and obtaining new customers and contracts for the Defendant in Louisiana and Arkansas.

9.      The Employment Agreement also provides, that as to compensation for Plaintiff's services, Defendant agreed to pay Plaintiff an annual salary of $105,000 "plus a sales commission as defined by Defendants FY 2006 Sales Compensation Plan.
A true and complete copy of the FY 2006 Sales Compensation Plan is annexed hereto and made a part hereof as **Exhibit B**. Under the express terms of the FY 2006 Sales Compensation Plan,

Plaintiff was assigned an annual sales quota of $1,500,000 ("Annual Quota") and was to receive

a bonus of $20,000 if the Annual Quota of $1,500,000 is met, as it was. Commissions were to be

paid on the percentage by which sales generated by Plaintiff met or exceeded the Annual Quota.

The rate of commission payable increased in percentage increments as shown on **Exhibit B** and

were based on the percentage of sales meeting or exceeding the Annual Quota.

10.    In or about the end of May, 2006, Plaintiff obtained and closed on a contract for

Defendant with The Arkansas Department of Education ("ADE") for which Defendant agreed,

upon information and belief, to provide ADE with delivery of "a comprehensive school

improvement model to forty-six low performing schools in Arkansas"; "to provide professional

development and training to the target schools"; and "to provide on-site technical assistance and

coaching". The contract price was $6,095,000.

11.    Defendant's contract with ADE, which was obtained for Defendant by Plaintiff,

was for a term of thirteen months, commencing on May 30, 2006.

12.    Upon information and belief, Defendant has received payment to date for services

in connection with its contract with ADE of a major portion of the contract amount of

$6,095.000. As a result, and based upon Plaintiff's Employment Agreement with Defendant,

Plaintiff was to receive a commission and bonus in the amount of $557,999.00. Annexed hereto

and made a part hereof as **Exhibit C** is a Schedule showing the commissions and bonus earned

by Plaintiff under the FY 2006 Sales Compensation Plan.

13.    Defendant has paid nothing to Plaintiff on account of such earned commission to

which Plaintiff was entitled in connection with Defendant's contract with ADE.

14.    To date, Defendant has acknowledged that it owes Plaintiff a commission for

"...services in connection with the Agreement by and between ACI and the State of Arkansas

Department of Education, dated as of May 30, 2006..." but has only offered to pay a commission equal to $160,000 in full settlement of the commissions earned instead of the commission of $557,999.00 Defendant is required to pay Plaintiff under the Employment Agreement. Even that offer was tied to restrictive conditions including a three (3) year non-compete agreement and waiver of Plaintiff's rights under various federal employment and anti-discrimination statutes. A true and complete copy of such offer, dated December 22, 2006 and signed by Defendant's Vice President for Legal and Business Affairs, is annexed hereto and made a part hereof as **Exhibit D**.

15.    Defendant owes unpaid wages to Plaintiff in the amount of approximately $557,999.00 consisting of the amount of commissions not paid to the Plaintiff as aforesaid, and the amount of commissions properly payable pursuant to the Employment Agreement, together with interest on the unpaid amount from the dates on which each portion of the commission were to have been paid pursuant to the Employment Agreement.

16.    Plaintiff has received no portion of said monies due and owing, although same has been duly demanded when said monies became due.

17.    Upon information and belief, Defendant's failure to pay the wages was willful.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

18.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "17" of this Complaint with the same force and effect as if set forth more fully at length herein.

19.    As a result of Defendant's breach of contract, Plaintiff has been damaged in the sum of approximately $557,999.00, with interest.

4

## AS AND FOR A SECOND CAUSE OF ACTION

20.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "19" of this Complaint with the same force and effect as if set forth more fully at length herein.

21.    From on or about August 16, 2005, until December 31, 2006, Plaintiff was an "employee" of Defendant, Defendant was an "employer" of the Plaintiff, and Defendant was obligated to pay "the amount then due under the terms of employment", as such terms are defined by Louisiana State Labor Law.

22.    Defendant's failure to pay all earned commissions is in violation of the Louisiana State Labor Law, specifically Louisiana Revised Statute 23:631.

23.    As a result of the Defendant's violation of the Louisiana State Labor Law, Plaintiff has been damaged in the sum of approximately $557,999.00, with interest.

24.    As a result of the Defendant's violation of the Louisiana State Labor Law, Plaintiff is entitled to an award of attorney's fees pursuant to Louisiana Revised Statute 23:632.

## AS AND FOR A THIRD CAUSE OF ACTION

25.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "24" of this Complaint with the same force and effect as if set forth more fully at length herein.

26.    Pursuant to Louisiana Revised Statute 23:631(B), in the event of a dispute as to the amount owed to Plaintiff, Defendant is required to pay Plaintiff the undisputed portion of the amount due to Plaintiff.

27.    As set forth in Paragraph 14 hereof, Defendant has previously admitted in writing to Plaintiff that it owes the amount of $160,000 to Plaintiff.

28.    However, Defendant has refused and continues to refuse to pay the aforesaid undisputed portion in violation of Louisiana Revised Statute 23:631(B).

29.    As a result of Defendant's violation of Louisiana Revised Statute 23:631(B), Plaintiff has been damaged in the sum of $160,000, with interest.

30.    As a result of the Defendant's violation of the Louisiana State Labor Law, Plaintiff is entitled to an award of attorney's fees pursuant to Louisiana Revised Statute 23:632.

**WHEREFORE**, Plaintiff respectfully requests judgment: (1) on the first claim in the amount of approximately $557,999.00, with interest thereon; (2) on the second claim in the amount of approximately $557,999.00 with interest thereon together with attorneys' fees; and (3) on the third claim in the amount of $160,000 with interest thereon together with attorneys' fees, together with the costs and disbursements of this action; and for such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands trial by jury on all issues of this action.

Dated: New York, New York
       February 21, 2007

Yours, etc.

RICK STEINER FELL & BENOWITZ LLP

By: _____

    RAYMOND W. LEW, ESQ. (RL-4790)
    Attorney for Plaintiff,
    Three New York Plaza, 10th Floor
    New York, NY 10004
    (212) 422-0488

To:    AMERICA'S CHOICE, INC.
       39 Broadway, Suite 1850
       New York, NY  10006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
CECIL HARRIS,                        :
                                     :
                   Plaintiff,        :
                                     :        07 CIV 1359(VM)
                                     :
        - against -                  :
                                     :        **ORDER**
AMERICA'S CHOICE, INC.,              :
                                     :
                   Defendant.        :
------------------------------------ X

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____         │
│ DATE FILED: 2-27-07              │
└─────────────────────────────────┘
```

**VICTOR MARRERO, United States District Judge.**

In reviewing the complaint and related attachments filed in this matter the Court noted that plaintiff Cecil Harris ("Harris") asserts that he is a citizen of the State of Louisiana and that defendant America's Choice, Inc. ("America's Choice") is a Delaware corporation with a place of business in New York, New York. The complaint indicates that the events that gave rise to the action occurred in connection with Harris's employment with America's Choice as a business development manager in Louisiana and Arkansas from August 2005 to December 31, 2006 pursuant to an agreement dated August 10, 2005 (the "Agreement"), a copy of which is attached to the complaint. The Agreement is set forth on America's Choice's letterhead showing an address of offices in Washington, D.C. Also attached to the complaint is a copy of an offer of a Severance Agreement and Release of All Claims dated December 22, 2006 which proposed to terminate Harris's employment with



**EXHIBIT**

D

America's Choice and which provides that it was to be governed by the laws of the District of Columbia.    Based on these documents therefore appears that the connection of this action to this District is relatively insubstantial, and that in whole or in major part the material events, documents, persons and potential witnesses related to this action are located in the District for the District of Columbia or in a District in Louisiana.    Accordingly, it is hereby

**ORDERED** that to aid the Court's assessment of whether, for the convenience to the parties and witnesses, in the interest of justice and sound judicial administration, venue for this matter more properly lies in the District for the District of Columbia or in a District in Louisiana, the Court directs plaintiff Cecil Harris ("Harris") to respond by March 2, 2007, in a letter to the Court not to exceed three (3) pages, showing cause why this matter should not be transferred to the District for the District of Columbia or to a District in Louisiana pursuant to 28 U.S.C. § 1404(a); and it is further hereby

**ORDERED** that Harris serve a copy of this Order on defendant America's Choice, through counsel if known, and that defendant may respond by letter not to exceed three (3) pages submitted to the Court by March 7, 2007.

-2-

SO ORDERED.

DATED:    NEW YORK, NEW YORK
          27 February 2007


                                    Victor Marrero
                                      U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CECIL HARRIS,

                              Plaintiff,                      Case No.: 07 CV 1359

      -*against*-

                                                          **NOTICE OF DISMISSAL**
AMERICA'S CHOICE, INC.,                           **WITHOUT PREJUDICE**

                              Defendant.
-----------------------------------------------------------------X

      Plaintiff, CECIL HARRIS ("Plaintiff"), by his attorneys RICK STEINER FELL &

BENOWITZ LLP, hereby gives notice in accordance with Rule 41(a)(1), Federal Rules of Civil

Procedure, of the voluntary dismissal of the above entitled action without order of the court.

With respect thereto, the Plaintiff states that no answer or motion for summary judgment has

been received by counsel for the Plaintiff. Such dismissal is without prejudice and is not on the

merits. There has been no prior dismissal in any court of the United States or of any state of an

action based on or including the same claim as presented by the Plaintiff in its complaint herein.

Dated: March 1, 2007

                                    RICK STEINER FELL & BENOWITZ LLP
                                    Attorneys for Plaintiff,
                                    CECIL HARRIS

                                    By: _____
                                        RAYMOND W. LEW, ESQ. (RL-4790)
                                    3 New York Plaza, 10th Floor
                                    New York, New York 10004
                                    (212) 422-0488



EXHIBIT

E

```
************** -COMM. JOURNAL- ****************** DATE MAR-01-2007 ***** TIME 18:29 ********


    MODE = MEMORY TRANSMISSION              START=MAR-01 18:27    END=MAR-01 18:29

    FILE NO.=102

STN   COMM.    ONE-TOUCH/   STATION NAME/EMAIL ADDRESS/TELEPHONE NO.    PAGES    DURATION
NO.            ABBR NO.

001   OK       ≙            12128945645                               002/002   00:00:46



                                                -RSFB                   -

***** UF-7000 v2 ****************** -RSFB      - ***** -    1 212 422 0158- *********
```



RICK STEINER FELL & BENOWITZ LLP
A T T O R N E Y S   A T   L A W

NEW JERSEY OFFICE:
111 PATERSON AVENUE, HOBOKEN, NJ 07030
TEL: 201-798-6613 • FAX: 201-798-5070

WESTCHESTER OFFICE:
162 ROUTE 202, SOMERS, NY 10589
TEL: 914-277-7303 • FAX: 914-243-0330

THREE NEW YORK PLAZA, NEW YORK, NY 10004 • TEL: 212-422-0488 • FAX: 212-422-0158

**FACSIMILE COVER SHEET**

DATE: 3/1/2007

TO:         HON. VICTOR MARRERO
FAX NO.:    (212) 805-~~5371~~ 6382
FROM:       RAYMOND LEU, ESQ.
REFERENCE:  CECIL HARRIS v. AMERICA'S CHOICE, INC.
CC:         MARTIN E. KARLINSKY, ESQ. (212)894-5645
            ATTORNEY FOR DEFENDANT AMERICA'S CHOICE, N.C.
            Number of Pages including this Cover Sheet   2

MESSAGE: ATTACHED IS A COURTESY COPY OF THE NOTICE OF DISMISSAL
WITHOUT PREJUDICE. A COPY OF THE ATTACHED NOTICE WAS E-MAILED
TO THE ORDERS AND JUDGMENT CLERK.

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the above address via the United States Postal Service. We will reimburse you for postage. Thank you.

If you do not receive all pages, or if any portions of
the transmission are illegible, please call (212) 422-0488



EXHIBIT

F

CECIL HARRIS

VERSUS

AMERICA'S CHOICE, INC.

DOCKET NO. 115193 SEC. G

21st JUDICIAL DISTRICT COURT

PARISH OF LIVINGSTON

STATE OF LOUISIANA

### PETITION FOR DAMAGES

Plaintiff Cecil Harris ("Harris"), a natural person domiciled in Livingston Parish, Louisiana, represents as follows:

1.

The following party is made defendant herein:

America's Choice, Inc. ("Defendant"), a foreign corporation doing business in Louisiana without authorization to do so and without having appointed a registered agent in Louisiana.

2.

This Court, consistent with constitutional due process, may exercise personal jurisdiction over Defendant because Defendant regularly does or solicits business in this state and/or this cause of action arises out of a contract made and to be performed in part in this state. La. R.S. 13:3201.

3.

Venue is proper in this parish because Harris is domiciled in this parish and Defendant is a nonresident having failed to appoint an agent for service of process in the manner provided by law. La. R.S. 13:3203; La. Code Civ. P. art 42(5).

4.

Defendant is engaged in, among other things, providing educational materials and resources to schools, teachers and students from grades Kindergarten through 12.



1

5.

Pursuant to the terms of an employment agreement dated August 10, 2005 (the "Employment Agreement") which was signed and accepted by Defendant and Harris, Harris commenced employment with Defendant on or about August 16, 2005 and was employed continuously by Defendant until December 31, 2006 when Harris voluntarily resigned. A true and complete copy of the Employment Agreement is annexed hereto and made a part hereof as Exhibit A.

6.

Under the Employment Agreement, Harris' employment position with the Defendant was as Business Development Manager, and his principal job duties included soliciting and obtaining new customers and contracts for Defendant in Louisiana and Arkansas.

7.

The Employment Agreement also provides, that as to compensation for Harris' services, Defendant agreed to pay Harris an annual salary of $105,000 "plus a sales commission as defined by Defendant's FY 2006 Sales Compensation Plan." A true and complete copy of the FY 2006 Sales Compensation Plan is annexed hereto and made a part hereof as Exhibit B.

8.

Under the express terms of the FY 2006 Sales Compensation Plan, Harris was assigned an annual sales quota of $1,500,000 ("Annual Quota") and was to receive a bonus of $20,000 if the Annual Quota was met, as it was. Commissions were to be paid on the percentage by which sales generated by Harris met or exceeded the Annual Quota. The rate of commission payable increased in percentage increments as shown on Exhibit B and were based on the percentage of sales meeting or exceeding the Annual Quota.

9.

In or about the end of May, 2006, Harris obtained and closed on a contract for Defendant with The Arkansas Department of Education ("ADE") for which Defendant agreed, upon information and belief, to provide ADE with delivery of "a comprehensive school improvement model to forty-six low performing schools in Arkansas;" "to provide professional development and training to the target schools;" and "to provide on-site technical assistance and coaching."

10.

The contract price was $6,095,000.

11.

Defendant's contract with ADE, which was obtained for Defendant by Harris, was for a term of thirteen months, commencing on May 30, 2006.

12.

Upon information and belief, Defendant has received payment to date for services in connection with its contract with ADE of a major portion of the contract amount of $6,095.000.    As a result, and based upon Harris' Employment Agreement with Defendant, Harris was to receive a commission and bonus in the amount of $557,999.00. Annexed hereto and made a part hereof as Exhibit C is a Schedule showing the commissions and bonus earned by Harris under the FY 2006 Sales Compensation Plan.

13.

Defendant has paid nothing to Harris on account of such earned commission to which Harris was entitled in connection with Defendant's contract with ADE.

14.

Defendant owes unpaid wages to Harris in the amount of approximately $557,999.00 consisting of the amount of commissions not paid to Harris as aforesaid, and the amount of commissions properly payable pursuant to the Employment Agreement, together with interest on the unpaid amount from the dates on which each portion of the commission were to have been paid pursuant to the Employment Agreement.

15.

Harris has received no portion of said monies due and owing, although same has been duly demanded when said monies became due.

16.

Upon information and belief, Defendant's failure to pay the wages was willful.

17.

As a result of Defendant's breach of contract, Harris has been damaged in the sum of approximately $557,999.00, with interest.

18.

From on or about August 16, 2005, until December 31, 2006, Harris was an "employee" of Defendant, Defendant was an "employer" of the Harris, and Defendant was obligated to pay "the amount then due under the terms of employment," as such terms are defined by Louisiana State Labor Law.

19.

Defendant's failure to pay all earned commissions is in violation of the Louisiana State Labor Law, specifically La. R.S. 23:631.

20.

As a result of the Defendant's violation of the Louisiana State Labor Law, Harris has been damaged in the sum of approximately $557,999.00, with interest.

21.

As a result of the Defendant's violation of the Louisiana State Labor Law, Harris is entitled to an award of attorney's fees pursuant to La. R.S. 23:632.

22.

S. Bradley Rhorer and V. Katharine Crumby-Nance hereby request written notice of the day of trial in this matter, as well as notice of hearings, whether on the merits or otherwise, orders, judgments and interlocutory decrees, and any and all formal steps taken by the parties herein, the Judge or any member of Court, as provided in the Louisiana Code of Civil Procedure.

**WHEREFORE**, Harris requests that citation issue and after due proceedings had that there be judgment in favor of Harris and against Defendant in the amount of $557,999.00, together with attorney fees, legal interest, costs, and all such other relief as law, equity and the nature of this case may allow.

Respectfully Submitted:

**RHORER LAW FIRM**

S. Bradley Rhorer
Louisiana Bar No. 25487
V. Katharine Crumby-Nance
Louisiana Bar No. 28544
10566 Airline Highway
Baton Rouge, Louisiana 70816
(225) 292-2767
(225) 292-2769 (fax)

<u>**PLEASE SERVE:**</u>

**America's Choice, Inc.**
Via long arm statute

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICA'S CHOICE, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 1:07CV00423 RWR** |
| | ) |
| **CECIL HARRIS,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>ORDER</u>

UPON CONSIDERATION OF Defendant Cecil Harris' Motion to Dismiss Pursuant to

Fed. R. Civ. P. 12(b)(2); it is hereby

ORDERED that Defendant's Motion is GRANTED.

ENTERED THIS _____ day of _____, 2007.


_____
Judge Richard W. Roberts

COPIES TO:

Andrew J. Terrell, Esq.
Whiteford, Taylor & Preston
1025 Connecticut Ave., N.W.
Suite 400
Washington, DC   20036

S. Bradley Rhorer, Esq.
Rhorer Law Firm
10566 Airline Highway
Baton Rouge, LA  70816

Robert J. Benowitz, Esquire
Rick Steiner Fell & Benowitz, LLP
Three New York Place
New York, New York  10004

Ugo A. Colella, Esquire
KATTEN MUCHIN ROSENMAN, LLP
1025 Thomas Jefferson Street, NW
Suite 700
Washington, DC 20007

*198449*