IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICA'S CHOICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:07CV00423 RWR |
| v. | ) | |
| | ) | |
| CECIL HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Plaintiff America's Choice, Inc. ("Plaintiff" or "America's Choice"), by and through its undersigned counsel, hereby opposes Defendant Cecil Harris' ("Defendant") Motion to Dismiss Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on two grounds: First, in light of the filing of Plaintiff's Amended Complaint, the original Complaint has been superseded and Defendant's Motion should be denied as moot. Second, even if the Court were to reach the personal jurisdiction issue now, this Court should find that maintenance of this suit against Defendant does not offend traditional notions of fair play and substantial justice.

### Statement of Relevant Facts

America's Choice is a company based in the District and engaged in the business of providing academic solutions through consultancy, publishing, professional development training, and materials and program offerings to public schools, public school districts, and states nationwide in connection with public school reform and improvement. America's Choice is a for-profit subsidiary of The National Center on Education and the Economy, a not-for-profit

corporation. *See* Affidavit of Jason Dougal, sworn on March 26, 2007, attached hereto as Exhibit 1 ("Dougal Aff."), ¶ 3.

Defendant was a sales representative for America's Choice on the Southeast Region Sales Team from August 2005 to December 2006. Dougal Aff. ¶ 5. Defendant applied for the position of a sales representative in August 2005 by completing and sending an employment application to America's Choice's D.C. headquarters. Dougal Aff. ¶ 6. Defendant entered into an employment relationship with America's Choice when he signed an offer letter from America's Choice and returned the same to its D.C. headquarters. Dougal Aff. ¶ 7.

After becoming employed with America's Choice, Defendant remained in contact with this forum. He traveled to the District of Columbia for sales orientation and training, and returned to this area on two separate occasions for additional training. Dougal Aff. ¶ 8. Defendant's paychecks, which were deposited electronically, were issued from the D.C. office. Dougal Aff. ¶ 9. All supplies and office support received by Defendant during his employment were sent from America's Choice's D.C. headquarters, such as equipment, computer services and assistance, and business cards and stationary. Dougal Aff. ¶ 10. On information and belief, Defendant communicated with America's Choice's D.C. office via telephone and e-mail on a regular basis. Specifically, he provided sales reports to the Chief Financial Officer and discussed employment matters with the Human Resources Department. Dougal Aff. ¶ 11. In addition, Defendant called America's Choice's counsel in D.C. on several occasions in connection with the negotiations of the contract with the Arkansas Department of Education, the commissions related to which are at issue in this case. Dougal Aff. ¶ 12. Negotiation and final agreements with customers for America's Choice's services and products coordinated by individual sales representatives, including Defendant, were done through America's Choice's D.C. headquarters.

Dougal Aff. ¶ 13. Commissions to sales representatives were based on payments made by the customers to America's Choice in D.C. pursuant to the commission plan. Dougal Aff. ¶ 14.

## Argument

### I. Defendant's Motion to Dismiss Is Moot Due to the Amended Complaint

Defendant's Motion is moot because America's Choice has concurrently filed its First Amended Complaint. Under Rule 15(a), America's Choice can amend its pleading once as a matter of course at any time before a responsive pleading is served. *See James v. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000) (Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend its complaint once at any time before the defendant has filed a responsive pleading and the court has decided a motion to dismiss.). For purposes of Rule 15, motions to dismiss are not considered responsive pleadings. *Id.* at 283; *United States Info. Agency v. Krc*, 905 F.2d 389, 399 (D.C. Cir. 1990). When a party has filed a superseding amended complaint, all pending motions pertaining to the original complaint become moot and require the Court to deny the challenging motions. *P & V Enterprises v. U.S Army Corps of Engineers*, 466 F. Supp.2d 134, 136 (D.D.C. 2006) (denying the defendant's motions to dismiss as moot in light of the superseding amended complaint); *Baltierra v. West Va. Bd. Of Medicine*, 253 F. Supp.2d 9, 14 (D.D.C. 2003) (holding that the defendant's motion to dismiss for lack of personal jurisdiction and for failure to state a claim was denied as moot due to the filing of Plaintiff's First Amended Complaint). Accordingly, Defendant's Motions to Dismiss should be denied.

### II. This Court Has Personal Jurisdiction Over Defendant

Even if the Court were to rule on Defendant's Motion, Defendant has had sufficient contacts with this forum such that he is subject to this Court's jurisdiction. In determining a

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the court must engage in a two-step analysis. *Lott v. Burning Tree Club, Inc.*, 516 F.Supp. 913, 915 (D.D.C. 1980) (*citing in Federal Deposit Ins. Corp. v. O'Donnell*, 136 B.R. 585, 590 (D.D.C. 1991)). "First, the Court must determine whether the District of Columbia long-arm statute permits the exercise of jurisdiction over the defendants, and if so, [second] the Court must then inquire whether the exercise of jurisdiction over the defendants comports with constitutional due process." *O'Donnell*, 136 B.R. at 590, *citing Lott*, 516 F.Supp. at 915. Any factual discrepancies in the complaint and affidavits are resolved in favor of the plaintiff. *Ironbound Partners, LLC v. Source Interlink Companies, Inc.*, No. Civ. A. 05-1039, 2005 WL 3274575, *1 (D.D.C. Aug. 26, 2005) (unreported decision) (*citing Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 77 (D.D.C. 2004)).

> A. **Defendant Transacted Business in the District of Columbia Such that the Long-Arm Statute Permits the Exercise of Jurisdiction.**

Under the District's long-arm statute, the court may exercise personal jurisdiction over a non-resident defendant who "transacts any business in the District of Columbia." D.C. Code § 13-423(a)(1) "The requirement that the defendant 'transacts business' in the District is interpreted very broadly and can be met by any 'contractual activit[y] of a nonresident defendant which cause[s] a consequence [in the District]." *Ironbound Partners*, 2005 WL 3274575 at *2; *see Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981), *cert denied*, 455 U.S. 1006 (1982). "Moreover, to fall within the purview of § 13-423(a)(1), a nonresident defendant need not have been physically present in the District." *Mouzavires*, 434 A.2d at 992, *citing Dorothy K. Winston & Co. v. Town Heights Dev., Inc.*, 376 F.Supp. 1214, 1216 (D.D.C. 1974). Indeed, it is well-settled in D.C. law that contact by telephone or mail is sufficient to grant jurisdiction over a

party. *Mouzavires*, 434 A.2d at 995. Further, D.C. courts have long held that "a single act may be sufficient to constitute transacting business." *Mouzavires*, 434 A.2d at 992; *Bueno v. La Compania Peruana*, D.C. App., 375 A.2d 6, 9 (1977).

Here, Defendant "transacted business" in the District within the meaning of D.C. Code § 13-423(a)(1) by voluntarily and deliberately entering into an at-will employment relationship, with a D.C.-based company, from which this dispute arose and which imposed continuous obligations on Defendant to perform his duties as an employee of the company. This employment relationship contemplated future consequences in the District in that its purpose clearly was to benefit America's Choice through revenue generated by Defendant and sent to America's Choice in D.C. Indeed, negotiation and final agreements with customers for America's Choice's services and products coordinated by individual sales representatives, including Defendant, were done through America's Choice's D.C. headquarters. *See* Dougal Aff. ¶ 13. Commissions to sales representatives were based on payments made by the customers to America's Choice in D.C. pursuant to the commission plan. Dougal Aff. ¶ 14. In addition, Defendant's acts in the course of performing his duties were taken on behalf of America's Choice and as such, could severely affect the business, reputation and good will of America's Choice in D.C. Defendant's relationship and interactions with its D.C.-based employer hence meet the criteria of § 13-423(a)(1) to confer jurisdiction over him.

The case *Ironbound Partners, LLC v. Source Interlink Companies, Inc.* 2005 WL 3274575, is instructive. In *Ironbound Partners*, plaintiff Ironbound filed a complaint in this Court seeking a declaration of the parties' right and liabilities under a referral agreement under which plaintiff was to receive compensation as a result of introducing defendant Source to a client that plaintiff believed could help expand defendant's industry. *Ironbound Partners*, 2005

WL 3274575 at *1. Plaintiff Ironbound was a Delaware company with its principal place of business in the District of Columbia and Defendant Source was a Delaware corporation with its principal place of business in Florida. *Id.* at *1n.4. In denying Source's motion to dismiss for lack of personal jurisdiction, this Court held that jurisdiction was proper "**where the defendant created 'continuing obligations' between himself and residents of the forum.**" *Id.* at *2 (emphasis added). The Court further held that "'purposeful availment' is not solely determined by which party initiates the contact" and that "**[w]here a defendant creates continuing obligations between itself and residents of the forum state, the defendant is deemed to have purposefully availed itself of the privileges, protections and benefits of the forum state's laws.**" *Id.* at *3. The Court found that it had jurisdiction over Source because it entered into the referral agreement with a D.C.-based plaintiff "voluntarily, deliberately, and with continuing obligations." *Id.* In reaching its decision, the Court rejected Source's argument that jurisdiction was lacking because the agreement was neither negotiated nor executed or performed by Source in the District and the breach of the agreement did not occur in the District. *Id.* The Court concluded that it had jurisdiction even though the agreement was negotiated solely by email, telephone and fax because "jurisdiction may not be avoided merely because a nonresident defendant does not physically enter the forum state." *Id.*

Another case which underscores this Court's jurisdiction over Defendant is *Quetel Corp. v. Columbia Communications Int'l, Inc.*, 779 F.Supp. 183 (D.D.C. 1991), in which this Court held that a single contract with a D.C.-based company with continuous obligations subjected the defendant to this Court's jurisdiction. In that case, the defendant, a nonresident law firm, agreed to be the sole signatory on an escrow account established for the benefit of plaintiff, who was a D.C.-based corporation involved in a contractual dispute with the defendant firm's client located

6

in Ohio, which was delinquent in making payments to plaintiff. *Id.* at 184. The escrow account would ensure that payments made by a third party to defendant firm's client were to flow into this account and transferred to plaintiff's bank account in Washington, D.C. *Id* The escrow agreement was reached after a number of communications between the parties via letters, telephone and telecopiers. *Id.* This Court conferred personal jurisdiction over defendant law firm on the grounds that the firm entered into a contract with plaintiff, which it knew was located in the District, and that the escrow contract was substantially connected to the District because services were to be performed in the District and payments were made into plaintiff's account in the District. *Id.* at 185.

Thus, Defendant's voluntary entry into an employment relationship with a D.C.-based company with continuing obligations on Defendant is sufficient to form the basis of this Court's personal jurisdiction over him.

  **B.  This Court's Long-Arm Jurisdiction Over This Case Comports with Due Process.**

This Court's exercise of long-arm jurisdiction over Defendant comports with due process, the second prong of this two-part inquiry. Due process requires that a defendant have minimum contacts with the forum state such that being sued there comports with traditional notions of fair play and substantial justice. *Quetel Corp.*, 779 F.Supp. at 185; *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To determine whether the exercise of long-arm jurisdiction comports with due process, "the Court is guided by the quality, not the quantity, of defendant's contacts with the forum." *O'Donnell*, 136 B.R. at 591, *citing Mouzavires*, 434 A.2d at 992.

Here, Defendant has made sufficient contacts with this forum so as to allow this Court to exercise jurisdiction over him. He voluntarily and affirmatively applied for the position of a sales representative in August 2005 by completing and sending an employment application to America's Choice's D.C. headquarters. Dougal Aff. ¶ 6. Defendant entered into an employment relationship with America's Choice when he signed an offer letter from America's Choice and returned the same to its D.C. headquarters. Dougal Aff. ¶ 7. After becoming employed with America's Choice, Defendant remained in contact with this forum. He traveled to the District of Columbia for sales orientation and training, and returned to this area on two separate occasions for additional training. Dougal Aff. ¶ 8. Defendant's paychecks, which were deposited electronically, were issued from the D.C. office. Dougal Aff. ¶ 9. All supplies and office support received by Defendant during his employment were sent from America's Choice's D.C. headquarters, such as equipment, computer services and assistance, and business cards and stationary. Dougal Aff. ¶ 10. On information and belief, Defendant communicated with America's Choice's D.C. office via telephone and e-mail on a regular basis. Specifically, he provided sales reports to the Chief Financial Officer and discussed employment matters with the Human Resources Department. Dougal Aff. ¶ 11. In addition, Defendant called America's Choice's counsel in D.C. on several occasions in connection with the negotiations of the contract with the Arkansas Department of Education, the commissions related to which are at issue in this case. Dougal Aff. ¶ 12. Thus, the totality of these facts demonstrates that Defendant has made minimum contacts with the District such that the maintenance of this suit would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, Plaintiff respectfully requests that the Court grant limited jurisdictional discovery.

Dated: Washington, D.C.
March 27, 2007

KATTEN MUCHIN ROSENMAN LLP

By: _____/s/_____
Ugo Colella (D.C. Bar No. 473348)
1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, D.C. 20007
Phone: (202) 625-3755
Fax: (202) 295-1174

Of Counsel:

Martin E. Karlinsky, Esq.
(D.C. Bar No. 447859)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
(212) 940-8800

# Exhibit 1

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA'S CHOICE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:07CV00423 RWR |
| ) | |
| CECIL HARRIS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Jason Dougal, being first duly sworn, depose and states as follows:

1. I am Vice President of Legal and Business Affairs of America's Choice, Inc. ("America's Choice"). I oversee all legal matters for America's Choice, including the creation and execution of employment contracts and the implementation of the commission plan at issue in this case under which Defendant Cecil Harris ("Defendant") asserts additional compensation is due. As such, I am fully familiar with the facts and circumstances stated herein based upon my personal knowledge, except as to those matters stated to be based on information and my belief, and as to all such matters, I believe them to be true.

2. I make this affidavit in support of Plaintiff's Memoranda of Law in Opposition to Defendant's Motions to Dismiss.

3. America's Choice is engaged in the business of providing academic solutions through consultancy, publishing, professional development training, and materials and program offerings to public schools, public school districts, and states nationwide in connection with public school reform and improvement. America's Choice

is a for-profit subsidiary of The National Center on Education and the Economy, a not-for-profit corporation.

4. America's Choice is based in the District of Columbia. The D.C. headquarters oversees the operations and activities of each of its sales representatives located in the field throughout the country.

5. Defendant was a sales representative for America's Choice on the Southeast Region Sales Team from August 2005 to December 2006.

6. Defendant applied for the position of a sales representative in August 2005 by completing and sending an employment application to America's Choice's D.C. headquarters.

7. Defendant entered into an employment relationship with America's Choice when he signed an offer letter from America's Choice and returned the same to its D.C. headquarters.

8. After becoming employed with America's Choice, Defendant traveled to the District of Columbia for sales orientation and training, and returned to this area on two separate occasions for additional training.

9. Defendant's paychecks, which were deposited electronically, were issued from the D.C. office.

10. Further, all supplies and office support received by Defendant during his employment were sent from America's Choice's D.C. headquarters, such as equipment, computer services and assistance, and business cards and stationary.

11. On information and belief, Defendant communicated with America's Choice's D.C. office via telephone and e-mail on a regular basis. Specifically, he

provided sales reports to the Chief Financial Officer and discussed employment matters with the Human Resources Department.

12. In addition, Defendant called me in the D.C. office on several occasions in connection with the negotiations of the contract with the Arkansas Department of Education. The commissions related to this contract are at issue in this case.

13. Preliminary agreements and negotiations for America's Choice's services and products coordinated by individual sales representatives, including Defendant, were sent to the D.C. headquarters where contracts were then finalized, approved, and executed.

14. Commissions to sales representatives were based on payments made by clients to the D.C. office pursuant to the commission plan.

15. I do solemnly declare and affirm under penalty of perjury that the foregoing is true and correct.

_____
Jason S. Dougal

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 27 DAY OF MARCH 2007.

_____
Notary Public

My Commission Expires