IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICA'S CHOICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CV00423 RWR |
| | ) | Judge Richard W. Roberts |
| CECIL HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO DISMISS, OR ALTERNATIVELY TO STAY,
OR ALTERNATIVELY TO CHANGE VENUE**

Plaintiff America's Choice, Inc. ("America's Choice") hereby opposes Defendant Cecil Harris's ("Defendant" or "Harris") Second Motion to Dismiss, or Alternatively to Stay, or Alternatively to Change Venue under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

Through his Rule 12(b)(6) "facial" challenge, Defendant seeks dismissal of the case by prematurely challenging the underlying merits of the breach of loyalty claim and seeking protection from this suit under the *Wilton* or *Brillhart* abstention doctrines. Contrary to Defendant's unsupported assertions, the First Amended Compliant concisely sets forth the necessary operative facts giving rise to a claim for breach of loyalty. Defendant cites no authority for the proposition that such a claim does not lie in the context of "at-will" employment nor does he assert how the pleadings are deficient. Rather, he attacks the underlying merits of the claim. Further, Defendant makes an unsuccessful attempt to evade this claim under Rule 15(c). The "relation back doctrine" of this rule provides no support for the contention that the allegations contained in the Amended Complaint do not relate to Defendant's conduct during his

commission dispute with America's Choice.  And, this doctrine does not dictate, as Defendant asserts, that this Court should abstain from hearing this dispute in favor of Defendant's later filed Louisiana action.

Moreover, the *Wilton/Brillhart* doctrine, on which Defendant relies, does not require abstention here, but rather counsels that this Court retain jurisdiction to hear this case and its sister case, *America's Choice, Inc. v. Bienvenu*, Case No. 1:07CV00438 (re-assigned to Judge Sullivan), in order to resolve both cases in an efficient and effective manner.  Finally, Defendant's arguments for transfer under 28 U.S.C. § 1404(a) are unavailing.  His assertions do not justify transfer "for the convenience of parties and witnesses, in the interest of justice," and accordingly should be rejected.  America's Choice thus respectfully requests that the Court deny Defendant's Motion to Dismiss, Stay, or Transfer.

## Background

This dispute originally began not when America's Choice filed its complaint in this Court on March 2, 2007, but rather on February 27, 2007, when Harris filed suit in the United States District Court for the Southern District of New York against his former employer America's Choice seeking commissions allegedly due him under America's Choice's commission plan.  The Southern District of New York had no connection whatsoever to the parties or their disputes, a fact that was evident from the face of Harris' New York pleading.  Thus, on the same day Defendant filed his action in New York, Judge Marreo *sua sponte* ordered Harris to show cause why the case should not be transferred to this Court (in the District of Columbia) or to a district in Louisiana in view of the fact that "the material events, documents, persons and potential witnesses related to this action are located in the District for the District of Columbia or in a District in Louisiana."  Rather than respond to the Court's Show Cause Order

and defend his choice of forum, Defendant chose to voluntarily dismiss his case. *See* Exhibits D and E to Defendant's Motions.

At the same time, Harris's New York counsel, Robert J. Benowitz, threatened to file yet another suit on behalf of another former America's Choice employee, Sandra Bush Bienvenu ("Bienvenu"), who is located in Florida. Bienvenu was Defendant's former supervisor. She is also seeking commissions due under the same commission plan as Defendant, and her claim(s) appear to involve the same set of operative facts that gave rise to the dispute between America's Choice and Defendant.

America's Choice reasonably feared that Bienvenu would file suit in Florida and Defendant would file in Louisiana, and that it would then face the potential burden of litigating in two different states on essentially the same claim, with little possibility of coordination or preservation of resources, and with the possibility of inconsistent and varying outcomes. America's Choice thus chose to file in this Court in order to obtain a just and speedy resolution of these similar matters, because the District of Columbia is the one common forum with which each of the three parties – America's Choice, Defendant, and Bienvenu - has the most substantial contacts, and because the District of Columbia is the place where the predominance of key witnesses and documents may be found.

In an attempt to obstruct the efficient resolution of these commission cases, however, Mr. Benowitz filed suit on behalf of Harris in Louisiana, but this time in state court.[1] Despite the presence of diversity jurisdiction and Harris's prior attempt to resolve his claims in federal court in New York, Harris strategically chose to file in state court. He now moves this Court to dismiss or transfer America's Choice first-filed complaint while, ironically, accusing America's

---

[1]    This case has since been removed to the United States District Court for the Middle District of Louisiana.

Choice of forum shopping. Specifically, Defendant argues, as he did in his initial motion to dismiss, that this Court should abstain from hearing this case because a) America's Choice's amended Complaint fails to state claim for relief for breach of duty of loyalty; b) the pleadings do not relate back to the original complaint; c) of the *Wilton/Brillhart* abstention doctrine; and d) 28 U.S.C. § 1404(a) allows for transfer. None of these arguments is meritorious.

## Argument

**A.  America's Choice Has Sufficiently Alleged a Claim for Breach of Defendant's Duty of Loyalty.**

In its Amended Complaint, America's Choice has clearly stated a claim for breach of duty of loyalty. Under Rule 12(b)(6), a motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All that is required of a complaint is that it contains "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005). America's Choice's allegations must be presumed true and should be liberally construed in its favor. *Leatherman v. Tarrant County Narcotics & Coordination Unit*, 507 U.S. 163, 164 (1993). Under this standard, the breach of loyalty claim cannot be dismissed.

The pleadings show that Defendant was an employee of America's Choice, and that as such, he owed America's Choice, among other things, a duty of loyalty. An employee has a "duty to act solely for the benefit of his employer and to avoid conflicts of interest between his duty to his employer and his own self-interest." *Riggs Inv. Mgmt. Corp. v. Columbia Partners*, 966 F. Supp. 1250, 1265 (D.D.C. 1997). Defendant breached this duty when "in or about August 2006, and extending through December 30, 2006, without excuse or justification of any kind, and

4

without notice to America's Choice, Harris effectively ceased to perform the essential duties of his position with America's Choice." Compl. at ¶ 10. As a result of Defendant's actions (or more appropriately, his inactions), America's Choice sustained injury and damages in the form of lost potential and valuable business. Compl. at ¶ 11-12, 31-32. In essence, the Complaint alleges that Defendant became dissatisfied with his employment because of his feelings over the Company's commission plan and that he engaged in self-help – simply ceasing to fulfill his duty of loyalty to his employer while continuing to feign performance, and receive salary and benefits.

Defendant is seeking the dismissal of this claim by challenging its underlying merits. He characterizes the allegations as asserting that he "did not work hard enough" and argues that, if this was indeed the case, that America's Choice should have fired him. *See* Def.'s Second Mot. to Dismiss at 5-6.[2] As is evident by Defendant's lack of supporting authority, America's Choice was not constrained to resolving Defendant's performance deficiencies through termination. And should Defendant wish to dispute the allegations regarding his level of performance, he may do so though a motion for summary judgment. In the meantime, America's Choice is entitled to proceed and explore Defendant's actions after he disputed America's Choice's payments of commissions. Defendant's arguments attacking the substantive merits of a claim under a Rule 12(b)(6) facial challenge are irrelevant, as are Defendant's arguments as to how America's Choice should have addressed his performance difficulties. Because Defendant has failed to demonstrate that the requirements to state a claim for breach of loyalty have not been met, his Motion to Dismiss should be denied.

---

[2]    Contrary to Defendant's characterization of the core allegations of the claim as asserting that he "did not work hard enough" (*e.g.,* Def.'s Second Mot. To Dismiss at 6), the Amended Compliant in fact asserts that Defendant did not work at all and made it appear as though he was working.

**B.**     **America's Choice's Amended Complaint Relates Back to the Original Complaint.**

Under Rule 15(c), an amended pleading "relates back" to the date of filing of the original pleading in order to ascertain whether a statute of limitations has been complied with when the amended pleadings add a claim(s) that "arose out of the conduct, transaction or occurrence" set forth in its original pleading. The "relation back" doctrine was intended to address statute of limitations issues. *See* Advisory Committee Notes to Fed. R. Civ. P. 15(c) ("the chief consideration of policy is that of the statute of limitations."). It was not designed to serve as a mechanistic test to aid in assessing whether a claim is "first filed." It suffices here to note that Defendant has not raised a statute of limitations argument, thereby conceding that Rule 15(c) is not operative in this case.

Even if the Rule 15(c) relation back doctrine was applicable, America's Choice's breach of duty of loyalty claim should be deemed to have been interposed as of the date of the filing of the original pleading since the new claim arose out of the same "conduct, transaction or occurrence" set forth in the original pleading. America's Choice's original pleadings set forth a claim arising out of the parties' rights and obligations in connection with Defendant's employment with America's Choice. The breach of loyalty claim is directly focused on, and arises from, the parties' employment relationship and responsibilities that have spawned a dispute concerning commission payments allegedly due. The breach of loyalty claim thus builds upon the "core operative facts" of the original complaint and therefore relates back to the original claim. *See Constr. Interior Sys. Inc. v. Donohoe Cos.*, 813 F. Supp. 29, 36 (D.D.C. 1992).

Finally, even if this Court were to deem the breach of loyalty claim unrelated to the original Complaint, this case would be in the same posture as it was before amendment – the

first-filed case in comparison to the after-filed Louisiana case. The dismissal of the added claim would not provide for the dismissal of the case in its entirety as Defendant asserts.[3] Thus, the first-filed rule would not operate to recognize Defendant's after-filed Complaint in Louisiana as the first filed case, but rather, would continue to recognize this case as first in line.

### C.    Judicial Economy Requires the Court to Retain Jurisdiction Over this Case to Allow for the Full and Efficient Adjudication of the Parties' Rights.

The continuance of this case in this forum would allow for all parties involved to have their rights fully adjudicated in one forum. The seminal case of *Brillhart v. Excess Ins. Co. of Am.* recognized that district courts have the discretion to determine whether it is appropriate to hear a declaratory judgment case or allow a state court to assume jurisdiction. 316 U.S. 491, 495 (1942). This discretion "is not plenary . . . for there must be well-founded reasons for declining to entertain a declaratory judgment action." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed.Cir. 2005) (citations omitted). In *Brillhart*, the Court did not dismiss the underlying case in favor of state adjudication. Instead, the Supreme Court remanded the case in order for the district court to determine whether the controversy could be fully adjudicated in state court. 316 U.S. at 496-497. Consequently, the mere fact that the first-filed case is a declaratory judgment does not, in and of itself, ineluctably lead to abstention. *Id.* And a comparison of the two conflicting cases surrounding Defendant's alleged commissions dispute does not counsel in favor of abstention or dismissal.[4]

---

[3]    Defendant's challenges to the Amended Complaint are solely focused on the addition of a new claim. Notably, Defendant does not contest the added allegations supporting jurisdiction, which clearly relate back to the Original Complaint.

[4]    It should be noted that the issue before this Court is no longer whether a first-filed declaratory judgment action in federal court or an after-filed "coercive" state court action should be allowed to go forward since America's Choice has removed Defendant's Louisiana state court action to the proper federal court.

First, it is doubtful that Louisiana law governs Defendant's state claims for commissions. Defendant contends that he is entitled to commissions arising from contracts he arranged for America's Choice's services and products. While Defendant solicited interest from the Arkansas Department of Education to purchase America's Choice's services, the final contract was negotiated and executed in America's Choice's D.C. headquarters. *See Kroger v. Legalbill.com LLC*, 436 F. Supp. 2d 97, 104 (D.D.C. 2006) (holding that in a choice of law situation, the Court should consider 1) the place of contracting, 2) the place of negotiation of the contract, 3) the place of performance of the contract, 4) the location of the subject matter of the contract, and 5) the place of incorporation and the place of business of the parties). Any claims for alleged commissions due would have been created in the District of Columbia and governed by the District's laws. Allowing this case to go forward here would allow the parties to fully adjudicate all claims under the applicable controlling law in the most appropriate venue.

Second, maintenance of suit here will not deprive Defendant of an appropriate forum to hear his claims. Any additional claims Defendant may believe he has can be, and indeed must be, joined to the present suit. Rule 13(a) requires that claims arising out of the same transaction or occurrence be asserted as a counterclaim. America's Choice brought suit after being informed by Defendant's counsel that he intended to file a claim on behalf of Harris and Bienvenu in two different states. Rather than litigate this controversy piecemeal, this Court should allow for the efficient resolution of both claims in one court at the same time. *See Brillhart*, 316 U.S. at 495 ("The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceedings . . ."); *see also Coyle*, 394 F.3d at 1348 (holding that in considering whether to retain a declaratory judgment action, the Court should consider whether retaining the case would allow for consolidation of related litigation and whether all

necessary parties could be joined to one suit).    And Defendant already has proven by his previously filed federal suit in New York that he would not be inconvenienced by litigating this suit outside of his home state, where neither he nor America's Choice has had any meaningful contacts in connection with this dispute.  Thus, judicial economy is best served by keeping this case here and requiring Defendant to assert and prosecute any related counterclaims.

At bottom, Defendant has purposely created a procedural thicket in order to avoid the efficient resolution of this case on its merits.  Defendant cannot escape the fact that this case was first properly filed by America's Choice in the present forum.  *See Washington Metro Area Transit Auth. v. Ragonesa*, 617 F.2d 828, 830 (D.C. Cir. 1980) (holding that where two cases between the parties on the same cause of action are commenced in different courts, the one commenced first should be allowed to proceed to its conclusion). It was Defendant's own forum shopping that prompted America's Choice to file suit to protect itself from needless multiple suits in state courts that, as in Louisiana, would eventually be removed to federal court.  *See Coyle*, 394 F.3d at 1348 ("While it is true that a district court may consider whether a party intended to preempt another's infringement when ruling on the dismissal of a declaratory action, we have endorsed that as merely one factor in the analysis.  Other factors include absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation . . .").  Defendant has already demonstrated that litigating his claims outside of Louisiana, a forum unrelated to the claims at issue, is not burdensome.  Thus, maintenance of the suit here does not contravene *Wilton/Brillhart* considerations and is required to promote judicial economy.

**D.    Transfer Pursuant to 28 U.S.C. § 1404(a) Is Not Appropriate.**

As a preliminary matter, Defendant overstates his case by claiming that the commissions allegedly due relate to customer contracts from both his home state of Louisiana and Arkansas. *See* Def.'s Second Mot. at 9.    This is patently untrue.    Although Defendant's sales territory encompassed the state of Louisiana, Defendant never succeeded in gaining any business in that state.    Instead, the issues in this case revolve around a single contract entered between America's Choice and the Arkansas Department of Education, a contract that was negotiated and executed between Arkansas and the District of Columbia.    *See* Affidavit of Jason Dougal at ¶ 12. Therefore, it is not "beyond peradventure" (Def's Second Mot. at 9) that this action could have been brought in the Middle District of Louisiana.    Because a substantial part of the alleged events or omissions giving rise to this action occurred outside of Louisiana, Defendant has not met his burden of establishing that this action could have been brought in the proposed transferee district. *See Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36 (D.D.C. 2006) (*citing DeLoach v. Philip Morris Co.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000).

Instead, Defendant focuses his efforts on the private and public interest factors that the Court must weigh in determining the propriety of transfer.    *Id.* at 37; *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998) ("*Shapiro*").    As detailed below, Defendant's analysis of those factors is wanting—he has failed to meet his "heavy burden of establishing that plaintiff's choice of forum is inappropriate." *Shapiro*, 24 F. Supp. 2d at 71 (emphasis added; citations omitted).

Private Interest Factors

(1)    America's Choice's privilege of choosing the forum: Defendant gives short shrift to this all-important factor.[5]   America's Choice is the Plaintiff in this action, and "Plaintiff's choice of forum is due substantial deference." *Id.* (citations omitted); *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (*"Bosworth"*) (citation omitted). "Furthermore, a plaintiff's choice of forum is given additional deference when the plaintiff is a resident of the forum district." *Int'l Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D.D.C. 2004) (*"Int'l Painters"*) (citations omitted); *Shapiro*, 24 F. Supp. 2d at 71 (citations omitted) (noting that the substantial deference due plaintiff's choice of forum "is particularly true where, as here, plaintiff is a resident of the chosen forum and the activities forming the basis of the suit have a significant connection with the forum").

Because America's Choice resides in the District, Defendant's contentions arise from commission policies originated and administered in the District, and because the Arkansas Department of Education contract commissions at issue are based on a contract finalized, approved, and executed in the District, Dougal Aff. ¶ 13, there is a significant nexus between the case and the District.  Transfer to another district, therefore, is inappropriate. *See Bosworth*, 180 F. Supp. 2d at 128 ("Most critical to this analysis of the private factors is whether the nexus between the operative facts and parties to the District of Columbia is sufficient to warrant the court giving deference to plaintiffs' choice of forum").

(2)    Defendant's preferred forum:  Defendant prefers to litigate this matter in the district where he is domiciled.  This preference alone, however, is not enough to overcome the

---

[5]    Defendant's claim that he is the "natural plaintiff" for purposes of this factor is unsubstantiated and ignores Plaintiff's claim for breach of fiduciary duty.

deference afforded America's Choice's forum.  For example, in *Shapiro*, this Court found that "substantial" connections to defendants' choice of forum (California) still did not warrant transfer.  24 F. Supp. 2d at 72.  In that case, the plaintiff law firm sued defendant clients in the District to recover attorney's fees, and the defendants counterclaimed for professional malpractice, breach of fiduciary duty, breach of contract, rescission, and money had and received.  This Court denied the defendants' motion to transfer even though the "defendants reside in California, the object of the contract was plaintiff's legal representation of defendants in California, and the payment (or lack thereof) of plaintiff's bills occurred in California."  *Id.* (holding that, "although substantial, the connections to California are no more significant than those to the District of Columbia"); *see also Bosworth,* 180 F. Supp. 2d at 129 (holding that deference to plaintiff's choice of forum prevails even though defendants had "legitimate reasons" for preferring the District of Montana and that the "operative facts and impact of this case are linked" to Montana).  Thus, Defendant's preference for another venue does not overcome the deference owed to America's Choice's choice of forum, especially where America's Choice has established a sufficient nexus.

       (3)     <u>Location where the claim arose</u>:  As previously discussed, Defendant's arguments that his claims arose in Louisiana lack merit.  Defendant solicited interest from the Arkansas Department of Education to purchase America's Choice's services, and the final contract was negotiated and executed in America's Choice's D.C. headquarters.  Defendant persists in seeking to join Arkansas and Louisiana into some sort of "mega-state" in an attempt to proffer Louisiana as the only possible forum for this action.  The sales contract at issue, however, bears no relation to Defendant's choice of forum.  Moreover, the letter agreement Defendant signed, creating his employment relationship with America's Choice, originated from (and was returned to) the

District.  In any event, to the extent the claims in this case arose in Louisiana at all, this factor does not outweigh the deference due America's Choice's choice of forum.  *See Shapiro*, 24 F. Supp. 2d at 72.

(4)    Convenience of the parties:  Here, Defendant argues that his home state is the most convenient and claims America's Choice would be "far less inconvenienced by litigating in Louisiana."  *See* Def.'s Second Motion at 11.  However, the mere shifting of the inconvenience from one party to another is insufficient to warrant transfer.  *Int'l Painters*, 357 F. Supp. 2d at 57.  In the *Int'l Painters* case, defendant was a small painting and home remodeling company located in Sioux City, Iowa, and argued that litigating its "dispute in the District of Columbia would be unduly burdensome for the company, particularly given the relatively small amount in controversy."  *Id.*  This Court denied the motion to transfer, finding this "convenience of the parties" factor an insufficient basis to transfer when a transfer would "merely shift the balance of inconvenience from Defendant to Plaintiff."  *Id.* (internal punctuation and citations omitted). Moreover, as evidenced by Defendant' previous attempt to bring suit in the United States District Court for the Southern District of New York, the prospect of litigating outside Louisiana is by no means anathema to him.

(5)    Convenience of witnesses:  Here again, Defendant is bootstrapping his preferred forum, Louisiana, into a matter where all fact witnesses, other than Defendant, will either come from Arkansas (where the client resides), Washington, D.C. (where the America's Choice contract administrators and corporate representatives reside), or Florida (where Defendant claims his primary contact with America's Choice, Sandra Bienvenu, resides).  To the extent Defendant conjures additional witnesses in Louisiana, (e.g. Def. Mot. At 11), he neither identifies such witnesses nor demonstrates that shifting inconvenience from his own witnesses to America's

13

Choice's witnesses is a sufficient basis for transfer. *See id.*; *Shapiro*, 24 F. Supp. 2d at 72 (concluding "that defendants' asserted need for third-party witnesses residing in California does not overcome the other factors favoring plaintiff's chosen forum"); *compare Lentz*, 464 F. Supp. 2d at 37-38 (where the plaintiff, all fact witnesses, and all relevant medical records were located in Maine, and the District of Columbia had no meaningful ties to the controversy).

(6)    Ease of access to source of proof:  This factor should favor neither party, as existing sales contracts and documentation pertaining to the America's Choice commission structure are not voluminous.    All relevant documents, however, including the executed Arkansas Department of Education contract and documents pertaining to the Company's commission plan and related policies, would be on file with America's Choice in Washington, D.C.

Public Interest Factors

(1)    The transferee's familiarity with governing law: Defendant's choice of law analysis suffers from a fatal flaw in that he fails to assess whether a true conflict exists between the laws of the District and his desired forum, Louisiana. *See Shapiro*, 24 F. Supp. 2d at 74 ("[T]he Court first determines whether a 'true conflict' exists between the laws of the competing jurisdictions. . . .  Where no true conflict exists, the Court applies the law of the District of Columbia by default") (internal citations omitted).  Defendant does not meet his burden and fails to point to any conflict between the District of Columbia and Louisiana with respect to this case and the claims asserted in the after-filed Louisiana case.

Nonetheless, Defendant insists that Louisiana would have a strong interest in the application of its wage payment statute.  *See* Def.'s Second Motion at 13; La. R.S. 23:631. Assuming *arguendo* that Defendant's Louisiana claims had merit, Defendant again has failed to

note any conflict between the Louisiana wage payment statute and the corresponding statute in the District of Columbia. *Compare* La. R.S. 23:631 (requiring payment due former employees after resignation or termination) *and* D.C. Code § 32-1303 (requiring same). Simply put, Defendant has failed to demonstrate that a bona fide conflict exists. Therefore, District of Columbia law applies by default and this first public factor is a non-factor, warranting a denial of Defendant's motion to transfer. *Shapiro*, 4 F. Supp. 2d at 73, n.6 ("Defendants have failed to demonstrate that a true conflict exists between the laws of the competing jurisdictions, a threshold issue in choice of law analysis) (citations omitted).

      (2)    <u>The relative congestion of the courts of the transferor and potential transferee</u>: Defendant entirely ignores this factor, which therefore lends no support for transfer. *Id.* at 73 ("Because defendants have provided the Court with no information regarding the level of congestion of the transferee court, the Court cannot conclude that this factor weighs in their favor").

      (3)    <u>The local interest in deciding local controversies at home</u>: Both jurisdictions have a degree of interest in this controversy, but Defendant has not demonstrated that Louisiana's interest outweighs that of the District of Columbia. The District is home to America's Choice, and the District has an interest in seeing employees of resident companies fulfill their employment obligations. Likewise, the District has an interest in seeing resident companies retain monies that are not due to out-of-state residents. To the extent that Defendant believes he has a bona fide counterclaim, the District protects the interests of employees who are due wages under D.C. Code § 32-1303. Because of the District's local interest in this matter, transfer is not warranted.

The foregoing 1404(a) factors weigh in America's Choice's favor and demand that the Court not transfer this case. This is not a case of impermissible forum shopping. America's Choice has brought bona fide claims in the jurisdiction where it resides, where it executed and administered the consultant contract with the Arkansas Department of Education that led to this controversy, where Defendant was trained for his employment, and where the predominance of key witnesses and documents are located. *Compare Lentz*, 464 F. Supp. 2d at 37-38. In contrast, Defendant has failed to meet his "heavy burden" to demonstrate how the substantial deference due America's Choice's choice of forum should be overruled.

## Conclusion

For the foregoing reasons, America's Choice respectfully requests that the Court deny Defendant's Motion to Dismiss, Stay, or Transfer and retain jurisdiction over this case.

Dated:   Washington, D.C.
         April 16, 2007

                                        KATTEN MUCHIN ROSENMAN LLP

                                        By:___/s/ Ugo Colella_____
                                               Ugo Colella (D.C. Bar No. 473348)
                                               1025 Thomas Jefferson Street, N.W.
                                               East Lobby, Suite 700
                                               Washington, D.C. 20007
                                               Phone:  (202) 625-3755
                                               Fax:    (202) 295-1174

                                        Of Counsel:

                                        Martin E. Karlinsky, Esq.
                                        (D.C. Bar No. 447859)
                                        KATTEN MUCHIN ROSENMAN LLP
                                        575 Madison Avenue
                                        New York, New York 10022-2585
                                        (212) 940-8800