IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA'S CHOICE, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CECIL HARRIS, )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:07CV00423 RWR |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
SECOND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Plaintiff America's Choice, Inc. ("Plaintiff" or "America's Choice") hereby opposes Defendant Cecil Harris' ("Defendant") Second Motion to Dismiss Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Because maintenance of this suit against Defendant in the District of Columbia does not offend traditional notions of fair play and substantial justice, Defendant's motion should be denied. Alternatively, the Court should defer its ruling and grant limited jurisdictional discovery.

**Statement of Relevant Facts**

America's Choice is a company based in the District and engaged in the business of providing academic solutions through consultancy, publishing, professional development training, and materials and program offerings to public schools, public school districts, and states nationwide in connection with public school reform and improvement. America's Choice is a for-profit subsidiary of The National Center on Education and the Economy, a not-for-profit

corporation. *See* Affidavit of Jason Dougal, sworn on March 26, 2007, attached hereto as Exhibit 1 ("Dougal Aff."), ¶ 3.[1]

Defendant was a sales representative for America's Choice on the Southeast Region Sales Team from August 2005 to December 2006. Dougal Aff. ¶ 5. Defendant applied for the position of a sales representative in August 2005 by completing and sending an employment application to America's Choice's D.C. headquarters. Dougal Aff. ¶ 6. Defendant entered into an employment relationship with America's Choice when he signed an offer letter and returned it to America's Choice D.C. headquarters. Dougal Aff. ¶ 7.

After becoming employed with America's Choice, Defendant remained in contact with this forum. He traveled to the District of Columbia for sales orientation and training, and returned to this area on two separate occasions for additional training. Dougal Aff. ¶ 8. Defendant's paychecks, which were deposited electronically, were issued from America's Choice D.C. headquarters. Dougal Aff. ¶ 9. All supplies and office support received by Defendant during his employment were sent from America's Choice's D.C. headquarters, such as equipment, computer services and assistance, and business cards and stationary. Dougal Aff. ¶ 10. On information and belief, Defendant communicated with America's Choice's D.C. office via telephone and e-mail on a regular basis. Specifically, he provided sales reports to the Chief Financial Officer and discussed employment matters with the Human Resources Department. Dougal Aff. ¶ 11. In addition, Defendant called America's Choice's counsel in D.C. on several

---

[1] Mr. Dougal's Affidavit was made in connection with Plaintiff's memorandum of law in opposition to Defendant's motion to dismiss the original complaint. The facts and circumstances recited therein are equally relevant to Defendant's second motion to dismiss and to this opposition memorandum.

occasions in connection with the negotiations of the contract with the Arkansas Department of Education, the commissions related to which are at issue in this case. Dougal Aff. ¶ 12. Negotiation and final agreements with customers for America's Choice's services and products coordinated by individual sales representatives, including Defendant, were done through America's Choice's D.C. headquarters. Dougal Aff. ¶ 13. Commissions to sales representatives were based on payments made by the customers to America's Choice in D.C. pursuant to the commission plan. Dougal Aff. ¶ 14.

## Argument

### I.   This Court Has Personal Jurisdiction Over Defendant

Defendant has had sufficient contacts with this forum such that he is subject to this Court's jurisdiction. In determining a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the court must engage in a two-step analysis. *Lott v. Burning Tree Club, Inc.*, 516 F.Supp. 913, 915 (D.D.C. 1980) (*citing in Federal Deposit Ins. Corp. v. O'Donnell*, 136 B.R. 585, 590 (D.D.C. 1991)). "First, the Court must determine whether the District of Columbia long-arm statute permits the exercise of jurisdiction over the defendants, and if so, [second] the Court must then inquire whether the exercise of jurisdiction over the defendants comports with constitutional due process." *O'Donnell*, 136 B.R. at 590, *citing Lott*, 516 F.Supp. at 915. Any factual discrepancies in the complaint and affidavits are resolved in favor of the plaintiff. *Ironbound Partners, LLC v. Source Interlink Companies, Inc.*, No. Civ. A. 05-1039, 2005 WL 3274575, *1 (D.D.C. Aug. 26, 2005) (unreported decision) (*citing Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 77 (D.D.C. 2004)). Plaintiff merely has to set forth "factual allegations sufficient to connect the defendant to the forum and establish a prima facie showing of jurisdiction" in order to defeat Defendant's motion. *Sheikh v. Mr. K's Rest., Inc.*, No. Civ. A.

04-00515, 2005 WL 1387591, *2 (D.D.C. June 10, 2005) (unreported decision) (*citing Nix v. Hoke*, 62 F. Supp. 2d 110, 113 (D.D.C. 1999)).

### A.  Defendant Transacted Business in the District of Columbia Such that the Long-Arm Statute Permits the Exercise of Jurisdiction

Under the District's long-arm statute, the court may exercise personal jurisdiction over a non-resident defendant who "transacts any business in the District of Columbia." D.C. Code § 13-423(a)(1) "The requirement that the defendant 'transacts business' in the District is interpreted very broadly and can be met by any 'contractual activit[y] of a nonresident defendant which cause[s] a consequence [in the District].'" *Ironbound Partners*, 2005 WL 3274575 at *2 (citation omitted); *see Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981), *cert denied*, 455 U.S. 1006 (1982). "Moreover, to fall within the purview of § 13-423(a)(1), a nonresident defendant need not have been physically present in the District." *Mouzavires*, 434 A.2d at 992, citing *Dorothy K. Winston & Co. v. Town Heights Dev., Inc.*, 376 F.Supp. 1214, 1216 (D.D.C. 1974). Indeed, it is well-settled that contact by telephone or mail is sufficient to confer jurisdiction. *Mouzavires*, 434 A.2d at 995. Further, D.C. courts have long held that "a single act may be sufficient to constitute transacting business." *Mouzavires*, 434 A.2d at 992; *Bueno v. La Compania Peruana*, 375 A.2d 6, 9 (D.C. 1977).

Here, Defendant "transacted business" in the District within the meaning of D.C. Code § 13-423(a)(1) by voluntarily and deliberately entering into an employment relationship with a D.C.-based company, from which this dispute arose and which imposed continuous obligations on Defendant to perform his duties as an employee of the company. This employment relationship contemplated future consequences in the District in that its purpose clearly was to benefit America's Choice through revenue generated by Defendant and sent to America's Choice

4

in D.C. Indeed, negotiation and final agreements with customers for America's Choice's services and products coordinated by individual sales representatives, including Defendant, were done through America's Choice's D.C. headquarters. *See* Dougal Aff. ¶ 13. Commissions to sales representatives were based on payments made by the customers to America's Choice in D.C. pursuant to the commission plan. Dougal Aff. ¶ 14. In addition, Defendant's acts in the course of performing his duties were taken on behalf of America's Choice and naturally have a direct and substantial impact on the business, reputation and good will of America's Choice in D.C. Defendant's relationship and interactions with its D.C.-based employer therefore meet the criteria of § 13-423(a)(1) to confer jurisdiction over him.

    **B.    The Exercise of Long-Arm Jurisdiction in This Case Comports with Due Process**

Due process requires that a defendant have "minimum contacts" with the forum state such that being subject to suit there would comport with traditional notions of fair play and substantial justice. *Quetel Corp. v. Columbia Communications Int'l, Inc.*, 779 F.Supp. 183, 185 (D.D.C. 1991); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To determine whether the exercise of long-arm jurisdiction comports with due process, "the Court is guided by the quality, not the quantity, of defendant's contacts with the forum." *O'Donnell*, 136 B.R. at 591, *citing Mouzavires*, 434 A.2d at 992.

As we have demonstrated, Defendant has had sufficient contacts with this forum to support the exercise jurisdiction over him. He voluntarily and affirmatively applied for the position of a sales representative in August 2005 by completing and sending an employment application to America's Choice's D.C. headquarters. Dougal Aff. ¶ 6. Defendant entered into an employment relationship with America's Choice when he signed an offer letter and returned it

to America's Choice D.C. headquarters. Dougal Aff. ¶ 7. After becoming employed with America's Choice, Defendant maintained regular contact with this forum. He traveled to the District of Columbia for sales orientation and training, and returned to this area on two separate occasions for additional training. Dougal Aff. ¶ 8. Defendant's paychecks, which were deposited electronically, were issued from the D.C. office. Dougal Aff. ¶ 9. All supplies and office support received by Defendant during his employment with America's Choice were sent from America's Choice's D.C. headquarters, such as equipment, computer services and assistance, and business cards and stationary. Dougal Aff. ¶ 10. On information and belief, Defendant communicated with America's Choice's D.C. office via telephone and e-mail on a regular basis. Specifically, he provided sales reports to the Chief Financial Officer and discussed employment matters with the Human Resources Department. Dougal Aff. ¶ 11. In addition, Defendant called America's Choice's counsel in D.C. on several occasions in connection with the negotiations of the contract with the Arkansas Department of Education, the commissions related to which are at issue in this case. Dougal Aff. ¶ 12. Thus, the totality of these facts demonstrates that Defendant has had minimum contacts with the District such that the maintenance of this suit would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

    C.    **The *Ironbound* Decision is Both Instructive and Applicable to the Circumstances of This Case**

Contrary to the Defendant's contention, *Ironbound Partners* supports this Court's exercise of personal jurisdiction over the Defendant. In that case, plaintiff Ironbound filed a complaint in this Court seeking "a declaration of the parties' right and liabilities" under a referral agreement under which plaintiff was to receive compensation as a result of introducing defendant Source to a client that plaintiff believed could help expand defendant's industry.

*Ironbound Partners*, 2005 WL 3274575 at *1. Plaintiff Ironbound was a Delaware company with its principal place of business in the District of Columbia, and Defendant Source was a Delaware corporation with its principal place of business in Florida. *Id.* at *1, n.4. In denying Source's motion to dismiss for lack of personal jurisdiction, this Court held that jurisdiction was proper **"where the defendant created 'continuing obligations' between himself and residents of the forum."** *Id.* at *2 (emphasis added). The Court further held that "'purposeful availment' is not solely determined by which party initiates the contact" and that **"[w]here a defendant creates continuing obligations between itself and residents of the forum state, the defendant is deemed to have purposefully availed itself of the privileges, protections and benefits of the forum state's laws."** *Id.* at *3 (emphasis added). The Court found that it had jurisdiction over Source because it entered into the referral agreement with a D.C.-based plaintiff "voluntarily, deliberately, and with continuing obligations." *Id.* In reaching its decision, the Court rejected Source's argument that jurisdiction was lacking because the agreement was not negotiated, executed, or performed by Source in the District, and a breach did not occur in the District. *Id.* The Court concluded that it had jurisdiction even though the agreement was negotiated solely by email, telephone and fax because "jurisdiction may not be avoided merely because a nonresident defendant does not physically enter the forum state." *Id.*

Defendant attempts to distinguish the *Ironbound* opinion by arguing that it was America's Choice that breached the contract and caused consequences in Defendant's home jurisdiction. *See Def.'s Sec. Mot. at 4-5.* Putting aside the fact that whether America's Choice breached (and whether Harris himself breached) are the central issues of this case, and of course have not been in any sense decided, Defendant misses the point—it does not change the fact that Defendant voluntarily and deliberately entered into an employment relationship with an

employer based in the District, creating continuing obligations with this forum. The latter point, of course, is the critical inquiry on this motion.

Moreover, this Court in *Ironbound* rejected an argument similar to the one Defendant makes here, holding that jurisdiction was proper even though the breach did not occur in the District. Nowhere in the *Ironbound* opinion did this Court base its personal jurisdiction analysis upon an examination of where the injury occurred or the merits of the underlying contract claim. The crux of the inquiry is the nature of Defendant's contacts with the District, not the merits of the underlying claim.[2] There is thus no basis to conclude, as Defendant urges, that a District-based employer is permitted to seek relief in the District's courts *only* if an employee is injured in the District.

This Court's decision in *Quetel Corp.*, 779 F.Supp. 183 likewise supports the exercise of jurisdiction over the Defendant. There, this Court held that a single contract with a D.C.-based company that imposed continuous obligations on the defendant subjected him to this Court's jurisdiction. In particular, the defendant, a nonresident law firm, agreed to be the sole signatory on an escrow account established for the benefit of plaintiff, who was a D.C.-based corporation involved in a contractual dispute with the defendant firm's client located in Ohio, which was delinquent in making payments to plaintiff. *Id.* at 184. The escrow account would ensure that payments made by a third party to defendant firm's client were to flow into this account and

---

[2] In his analysis of *Ironbound*, Defendant also studiously fails to mention that: (i) in addition to the declaratory judgment claim, Plaintiff's First Amended Complaint includes a separate claim for Defendant's breach of his duty of loyalty to America's Choice; and (ii) Defendant himself previously initiated an action in the Southern District of New York, where neither he nor America's Choice is resident, and sought to take advantage of a forum that was in all senses foreign to this controversy. His complaint at being sued in the District is thus a hollow one.

transferred to plaintiff's bank account in Washington, D.C. *Id* The escrow agreement was reached after a number of communications between the parties via letters, telephone and telecopiers. *Id*. This Court found personal jurisdiction over defendant law firm on the ground that the firm entered into a contract with plaintiff, which it knew was located in the District, and that the escrow contract was substantially connected to the District because services were to be performed in the District and payments were made into plaintiff's account in the District. *Id.* at 185.

So, too, here. Irrespective of the location and nature of the underlying negotiations, Defendant purposefully availed himself of the privileges, protections, and benefits of the District when he voluntarily entered into an employment relationship with a D.C.-based company that created continuing obligations between him and America's Choice. These factors form the basis of this Court's personal jurisdiction over him, and the exercise of that jurisdiction would not offend traditional notions of fair play and substantial justice.

## II.     In the Alternative, Plaintiff is Entitled to Limited Jurisdictional Discovery

Assuming, *arguendo*, that Plaintiff has not met its burden of making a *prima facie* showing of personal jurisdiction with the facts outlined above, Plaintiff is entitled to limited discovery on the issue. In this Circuit, "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, the jurisdictional discovery is justified." *Diamond Chem. Co., Inc. v. Atofina Chem., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) (*quoting GTE New Media Serv., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000)). "This Circuit's standard for permitting jurisdictional discovery is quite liberal." *Id.* (citations omitted). Indeed, the *GTE* court "permitted jurisdictional discovery even though it could not 'tell whether jurisdictional discovery will help to sort out' the jurisdictional questions in the case." *Id.*

(*quoting GTE*, 199 F.3d at 1352). Plaintiff need only show a "good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Id.* at 15-16 (citations omitted) (noting that, despite plaintiff's "paltry showing" of personal jurisdiction, discovery is warranted because there was no indication plaintiff's request was not made with the requisite good faith).

Plaintiff believes that limited discovery would enable it to show that Defendant initiated communications with America's Choice's D.C. office on a regular basis in the course of his employment, reinforcing Plaintiff's specific jurisdiction showing. Moreover, Plaintiff is entitled to limited discovery to ascertain the nature and extent of Defendant's contacts with the District to show that Defendant had a reasonable expectation that he would be haled into a District of Columbia court where, as here, a dispute arose over Defendant's alleged entitlement to commissions. *Cf. Ironbound Partners*, 2005 WL 3274575 at *2 ("The test [for personal jurisdiction] is whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled to court there") (citation and internal quotations omitted).

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Second Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, Plaintiff respectfully requests that the Court grant limited jurisdictional discovery.

Dated: Washington, D.C.
April 16, 2007

KATTEN MUCHIN ROSENMAN LLP

By: /s/ Ugo Colella
Ugo Colella (D.C. Bar No. 473348)
1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, D.C. 20007
Phone: (202) 625-3755
Fax: (202) 295-1174

Of Counsel:

Martin E. Karlinsky, Esq.
(D.C. Bar No. 447859)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
(212) 940-8800

# Exhibit 1

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICA'S CHOICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07CV00423 RWR |
| | ) | |
| CECIL HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

Jason Dougal, being first duly sworn, depose and states as follows:

1. I am Vice President of Legal and Business Affairs of America's Choice, Inc. ("America's Choice"). I oversee all legal matters for America's Choice, including the creation and execution of employment contracts and the implementation of the commission plan at issue in this case under which Defendant Cecil Harris ("Defendant") asserts additional compensation is due. As such, I am fully familiar with the facts and circumstances stated herein based upon my personal knowledge, except as to those matters stated to be based on information and my belief, and as to all such matters, I believe them to be true.

2. I make this affidavit in support of Plaintiff's Memoranda of Law in Opposition to Defendant's Motions to Dismiss.

3. America's Choice is engaged in the business of providing academic solutions through consultancy, publishing, professional development training, and materials and program offerings to public schools, public school districts, and states nationwide in connection with public school reform and improvement. America's Choice

is a for-profit subsidiary of The National Center on Education and the Economy, a not-for-profit corporation.

4. America's Choice is based in the District of Columbia. The D.C. headquarters oversees the operations and activities of each of its sales representatives located in the field throughout the country.

5. Defendant was a sales representative for America's Choice on the Southeast Region Sales Team from August 2005 to December 2006.

6. Defendant applied for the position of a sales representative in August 2005 by completing and sending an employment application to America's Choice's D.C. headquarters.

7. Defendant entered into an employment relationship with America's Choice when he signed an offer letter from America's Choice and returned the same to its D.C. headquarters.

8. After becoming employed with America's Choice, Defendant traveled to the District of Columbia for sales orientation and training, and returned to this area on two separate occasions for additional training.

9. Defendant's paychecks, which were deposited electronically, were issued from the D.C. office.

10. Further, all supplies and office support received by Defendant during his employment were sent from America's Choice's D.C. headquarters, such as equipment, computer services and assistance, and business cards and stationary.

11. On information and belief, Defendant communicated with America's Choice's D.C. office via telephone and e-mail on a regular basis. Specifically, he

provided sales reports to the Chief Financial Officer and discussed employment matters with the Human Resources Department.

12. In addition, Defendant called me in the D.C. office on several occasions in connection with the negotiations of the contract with the Arkansas Department of Education. The commissions related to this contract are at issue in this case.

13. Preliminary agreements and negotiations for America's Choice's services and products coordinated by individual sales representatives, including Defendant, were sent to the D.C. headquarters where contracts were then finalized, approved, and executed.

14. Commissions to sales representatives were based on payments made by clients to the D.C. office pursuant to the commission plan.

15. I do solemnly declare and affirm under penalty of perjury that the foregoing is true and correct.

_____
Jason S. Dougal

SUBSCRIBED AND SWORN TO
BEFORE ME THIS ___ DAY OF MARCH 2007.

_____
Notary Public

My Commission Expires